UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD DORSEY, *et al.*, *on behalf of themselves and all others similarly situated,* | ) ) ) ) | CASE NO. 1:20-cv-02014 |
| Plaintiffs, | ) ) | JUDGE BRIDGET M. BRENNAN |
| v. | ) ) | |
| AVIVA METALS, INC., *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

Before this Court is the Motion for Fed. R. Civ. P. 23 Class Certification, Conditional

Certification Pursuant to 29 U.S.C. § 216(b), Appointment of Class Counsel, and Issuance of

Notice to Putative Class/Collective Action Members filed by Plaintiffs Donald Dorsey and Craig

Murphy ("Plaintiffs"). (Doc. No. 27.) On December 13, 2021, Defendants Aviva Metals, Inc.

("Aviva") and Joao C.F. Saraiva ("Defendants") filed an opposition to conditional certification

(Doc. No. 37) and an opposition to class certification (Doc. No. 38). Plaintiffs replied to both

oppositions on January 3, 2022. (Doc. Nos. 41 & 42.) For the reasons stated herein, Plaintiffs'

motion is GRANTED in part.

I.     **Background**

       **A. Factual Background**

       Aviva Metals, Inc. ("Aviva") is headquartered in Houston, Texas and manufactures

continuous cast bronzes. (Doc. No. 28 at ¶¶ 9, 12.) Aviva maintains a foundry in Lorain, Ohio.

(*Id*. at ¶ 12.) Joao Saraiva is a General Manager for Aviva, and his responsibilities include the

day-to-day operations and management of the Lorain, Ohio foundry. (*Id*. at ¶ 10.) Aviva

employed Donald Dorsey as an hourly manufacturing employee from approximately January 2020 to August 2020.  (*Id.* at ¶ 19.)  Aviva employed Craig Murphy as an hourly manufacturing employee from approximately May 2017 to August 2020.  (*Id.* at ¶ 20.)

Plaintiffs seek Rule 23 certification of two state law, Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.03, subclasses of Aviva's non-exempt hourly manufacturing employees (collectively, the "Rule 23 Subclasses").  (Doc. No. 27 at PageID# 316.)  Plaintiffs identify the proposed Rule 23 Subclasses as follows:

> The "*Rule 23 Time Editing Class*": All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time edited; and

> The "*Rule 23 Time Rounding Class*": All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time rounded pursuant to Aviva Metals, Inc.'s 10-minute rounding policy.

(*Id.* at PageID# 316-17.)  Plaintiffs also seek conditional certification of two Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207, 216(b), subclasses (collectively, the "FLSA Subclasses").  Plaintiffs identify the proposed FLSA Subclasses as follows:

> The "*FLSA Time Editing Class*": All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2017 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time edited; and

> The "*FLSA Time Rounding Class*": All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2017 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time rounded

pursuant to Aviva Metals, Inc.'s 10-minute rounding policy.

(*Id.* at PageID# 317.)

### 1.   Time Editing

Aviva utilized an electronic timekeeping system provided by Paycom Payroll ("Paycom") to capture manufacturing employees' hours worked.  (Doc. No. 27 at PageID# 329; Doc. No. 15-1, Fed. R. Civ. P. 30(b)(6) Dep. of Aviva Metals, Inc. ("AMI Dep.") at 75:10-25.)  This system required manufacturing workers to clock their time in and out by placing their fingerprint on a biometric scanner.  (*Id.*)  The system allowed Aviva to ascertain the exact time – to the minute – that each manufacturing employee scanned in or out.  (*Id.*)  Aviva had no other means to record manufacturing employees' time.  (Doc. No. 27 at PageID #330; AMI Dep. at 80:24-81:4, 148:4-21; Doc. No. 27-2 at PageID# 669.)  Paycom was then able to generate Punch Change Reports that demonstrated when workers clocked in and clocked out of work.  (Doc. No. 27 at PageID# 331; AMI Dep. at 62:20-63:6; *see e.g.*, Doc. Nos. 27-36 & 27-37.)

Aviva's attendance policy required all manufacturing workers to be in their assigned work areas at the start of their shift.  (Doc. No. 27 at PageID# 329; AMI Dep. at 81:5-8.) Manufacturing employees were bound by Aviva's tardiness policy, which defined tardiness as "clocking in one (1) or more minutes past your scheduled starting time or reporting to the shop floor after the start of your shift."  (Doc. No. 27-19 (emphasis in original).)  The policy stated that a manufacturing employee could lose 15 minutes of pay for such tardiness.  (*Id.*)

Aviva required manufacturing employees to put on (or "don") protective gear and other equipment, spend time walking to work areas, and meet with other workers or supervisors to discuss their job duties prior to the start of their shift time.  (Doc. No. 27 at PageID# 331-37; AMI Dep. at 144:22-145:11; Doc. No. 15-2, Dorsey Dep. at 19:10-15, 20:3-20:7, 21:24-22:15,

24:21-25:8; Doc. No. 15-3, Murphy Dep. at 30:23-33:9.)  Plaintiffs confirm that Aviva required

its employees to arrive at the facility before their shift start time to don personal protective

equipment ("PPE").  (Dorsey Dep. at 19:10-18 (noting employees "had to be there early to put

our clothes and PPE – all of our PPE on"); Murphy Dep. at 30:23-33:9.)  The required equipment

included insulated and/or metatarsal safety boots, safety glasses, uniforms, and other additional

equipment depending on the worker and the work environment.  (*See* Murphy Dep. at 16:24-

17:3, 17:17-18:16, 19:10-14, 21:7-8; AMI Dep. at 129:10-130:17, 133:1-5; Dorsey Dep. at

19:22-20:2.)  In some instances, employees were able to don their employee uniforms at home,

but the protective gear could only be donned at the plant.  (AMI Dep. at 132:24-133:7, 144:22-

145:11; Murphy Dep. at 23:1-24:5, 31:4-33:9.)  Aviva required its manufacturing employees to

wear PPE for the employees' safety and because it was deemed an "integral and indispensable

part" of their job.  (Doc. No. 32 at ¶ 28.)

  After donning protective gear, manufacturing workers walked to their respective work

areas on the production floor by the start of their shift time.  Per the tardiness policy, a

manufacturing employee was tardy if he or she "report[ed] to the shop floor after the start of [his

or her] shift."  (Doc. No. 27-19 (emphasis in original).)  Because PPE was essential to all

manufacturing employees' jobs, they necessarily had to don the appropriate gear prior to arriving

at their work area.  (*Id.*; *see also* Doc. No. 32 at ¶ 29 (Defendants' answer admitting that "after

donning their specialized equipment, Plaintiffs and other manufacturing employees walked from

the area in which they retrieved or put on the specialized equipment to the production area.").)

  Manufacturing workers frequently attended pre-shift meetings.  (*See* Dorsey Dep. at

24:21-25:14; Murphy Dep. at 33:19-34:14, 53:8-14.)  Manufacturing workers had to confirm

their daily tasks with supervisors prior to the start of their shift.  (*See, e.g.*, Murphy Dep. at

33:19-6.)  And, prior to their shift starting time, workers met with the prior shift's employees to ascertain any pertinent shift-change information.  (*See, e.g.*, Dorsey Dep. at 26:3-17.)  Plaintiffs state that all pre-shift activities – from donning PPE, to walking to the shop floor, to any meetings needed prior to the shift – were necessary to complete job duties.  (*See* Murphy Dep. at 33:19-34:23.)  Because of this, Plaintiffs assert they were actually working and should have been compensated for time spent prior to the shift starting time.  (*See* Dorsey Dep. at 26:24-27:3 (estimating that, after clocking in, donning equipment, and walking to the floor, he was on the floor working at least 10-15 minutes prior to the shift starting time); *see also* Murphy Dep. at 33:19-34:23.)

Plaintiffs assert that manufacturing workers' shift starting time – and the start of their compensatory clock – were one in the same.  Plaintiffs point out that the time for which they were compensated was computed only from the scheduled start time of their shift.  This, they argue, ignores actual time spent engaged in work before their shift.  In support, Plaintiffs attach a spreadsheet listing approximately three thousand examples of Aviva's time manipulation policies.  (*See* Doc. No. 27-1.)  The spreadsheet identifies an "old value," which reflects when an employee scanned in the building.  (*Id.*)  The spreadsheet also lists a "new value," which shows the edited time.  (*Id.*)  For example, Dorsey scanned into work at 2:32 P.M. (the "old value") on August 11, 2020, but his time was edited to 3:00 P.M. (the "new value") in the Paycom system. (*Id.* at PageID# 454.)

The records reflect that Aviva also edited the time at the end of an employee's shift.  (*See id.* at PageID# 385 (reflecting edited clock out time on December 18, 2018, for Darryl Collett from 3:26 P.M. to 3:00 P.M.).)  Countering these assertions, Aviva notes that its manufacturing employees left their positions 15 minutes before the end of their shifts.  The company

compensated employees for those 15 minutes, purportedly to account for time spent putting on and taking off the protective gear.  (AMI Dep. at 81:21-82:2.)  Plaintiffs respond this is of no import because it often took the full 15 minutes at the end of a shift to clean up, return to the locker room, and take off (or "doff") the equipment.  (*See* Dorsey Dep. at 31:18-23; Murphy Dep. at 45:25-48:25.)  Moreover, Plaintiffs state that manufacturing workers often remained on the floor working beyond the 15-minute early release.  (Murphy Dep. at 45:1-16 (noting that for a shift ending at 11:30 P.M. he was frequently on the shop floor until 11:20 P.M. or 11:25 P.M.).)  Further, Plaintiffs state that Aviva required its manufacturing employees to remain clocked in until the official end time of their shift.  (*See* Dorsey Dep. at 28:12-18 (noting manufacturing employees "would get docked" pay if they clocked out early); Murphy Dep. at 44:7-22 (noting employees were reprimanded for attempting to clock out early).)

Accordingly, Plaintiffs argue that Aviva's policy of editing manufacturing employees' start and end time resulted in unpaid overtime in violation of Ohio and federal laws.

## 2.  Time Rounding

Aviva rounded employees' compensable work time to quarter-hour (*i.e.,* 15-minute) increments, but Aviva's timekeeping system automatically rounded down, *i.e.,* adverse to manufacturing employees, unless they worked a full eleven (11) minutes of additional time. (Doc. No. 27 at PageID# 343-44; AMI Dep. 177:3-178:2.)  Aviva's payroll records demonstrate that workers had to work a full eleven extra minutes to receive a favorable round of their time. (*See, e.g.*, Doc. No. 27-23 (demonstrating employee who worked 8 hours and 10 minutes was only compensated for 8 hours of work).)  While acknowledging that time rounding is not a *per se* violation of the FLSA or Ohio's wage and hour laws, Plaintiffs complain that Aviva's 11-minute threshold operates more like a one-way ratchet:  by design, it rounds against an employee more

often and thus does not 'average out' over time to provide full compensation for time worked. (Doc. No. 27 at PageID# 344.)

### B.  Procedural History

On September 8, 2020, Plaintiffs filed this class and collective action.  (Doc. No. 1.) Aviva answered on November 9, 2020.  (Doc. No. 10.)  At the April 27, 2021 status conference, the Court set an August 2, 2021 deadline for Plaintiffs to file for conditional class certification and class certification.  (Doc. No. 13.)  The Court also extended the deadline for fact discovery to September 1, 2021.  (*Id.*)  On July 6, 2021, Plaintiffs filed a motion for leave to file a first amended complaint *instanter* seeking to clarify their wage violation claims.  (Doc. No. 18.) Specifically, they sought to add a revised definition pertaining to the time editing class and an additional class relating to Aviva's time rounding practices.  (*Id.*)  Defendant Saraiva was also newly named upon information learned during discovery.  (*Id.*)  On August 16, 2021, the Court issued an Order granting the motion for leave to amend the complaint *instanter*.  (Doc No. 25.) The Court granted Plaintiffs' request to amend their complaint in part because the time rounding claim was "straightforward," fact discovery had yet to close, and Plaintiffs did not seek to re-depose Mr. Saraiva.  (Doc. No. 25 at PageID# 314.)

On August 23, 2021, Plaintiffs filed this motion for class certification pursuant to Fed. R. Civ. P. 23, conditional class certification pursuant to 29 U.S.C. § 216(b), appointment of class counsel, and issuance of notice to class members.  (Doc. No. 27.)  On August 27, 2021, Plaintiffs separately filed the amended complaint.  (Doc. No. 28.)  Defendants answered on September 3, 2021.  (Doc. No. 32.)  On December 13, 2021, Defendants filed an opposition to Plaintiffs' motion for FLSA conditional certification (Doc. No. 37) and Rule 23 class certification (Doc. No. 38).  On January 3, 2022, Plaintiffs replied to both oppositions.  (Doc. Nos. 41 & 42.)

## II.    <u>Law and Analysis</u>

Plaintiffs bring a Rule 23 class action alleging violations of the Ohio Wage Act as well as an FLSA collective action alleging violations of federal law.  Ohio law expressly incorporates the standards and principles found in the FLSA.  *See* Ohio Rev. Code § 4111.03(A) ("An employer shall pay an employee . . . in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the [FLSA].");  *Roufail v. SNS Cleveland LLC*, No. 1:13-cv-1849, 2014 WL 356506, at *2 n.1 (N.D. Ohio Jan. 31, 2014) ("The FLSA and the [Ohio Wage Act] may be considered together under federal law because the Ohio statute expressly incorporates the standards and principles found in the FLSA." (internal citation omitted)).  Thus, the laws underlying Plaintiffs' claims are analyzed using the same standards.  The preliminary mechanisms for certification, however, are addressed separately.

Employers are required to pay employees a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each work week.  *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014).  But compensable work is not specifically defined by law.  *See* 29 U.S.C. §§ 206-207;  *Busk*, 574 U.S. at 31.  The Supreme Court initially defined compensable work as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690-91 (1946).  Congress later narrowed that definition when it enacted the Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251-62, which carved out two exclusions from the FLSA's definition of compensable work.  *See Busk*, 574 U.S. at 32-33.  The FLSA now provides that time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "activities which are preliminary to or postliminary to [the employee's] principal activity or activities" are not

compensable.  29 U.S.C. § 254(a).

Determining whether an activity is "preliminary to or postliminary to . . . [a] principal activity" requires courts to decide what constitutes an employee's "principal activity."  *See Busk*, 547 U.S. at 33.  The Supreme Court has defined this phrase to include both the principal activities themselves as well as "all activities which are an 'integral and indispensable part of the principal activities.'"  *Id.* (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29-30 (2005)).  In turn, an activity is "integral and indispensable . . . to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Id.*  Importantly, the integral-and-indispensable inquiry does not hinge on whether the employer requires the activity or otherwise benefits the employer, but rather whether it is "tied to the productive work that the employee is *employed to perform*."  *Id.* at 36. (emphasis in original).  The Supreme Court has held that the donning of safety equipment integral to an employee's principal activity, including metatarsal safety boots and hard hats, qualifies as compensable time.  *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 232 (2014).

Employers are required to compute their employees' time from the moment they perform the first act that is "integral and indispensable" to their "principal activities."  29 C.F.R. § 790.6(a).  Under the "continuous workday rule," "any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA."  *IBP*, 546 U.S. at 37.  Accordingly, employers are required to compensate their employees for all principal activities, including donning and doffing equipment, as well as for all time that occurs after the first principal activity.  *Id.*

With respect to time rounding, Department of Labor regulations require that, should an employer round its employees' time, the time must be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour." 29 C.F.R. § 785.48(b). Further, the method for rounding time must not "result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." *Id.* In other words, a valid rounding policy must be "neutral, both facially and as applied." *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1075 (9th Cir. 2016) (quotation and citation omitted). Courts recognize that overtime violations can occur where an employer rounds its employees' times without evidence that the rounding practice averaged out to fully compensate the employees for the time worked. *See, e.g.*, *Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 2982005, at *4 (N.D. Ohio July 15, 2021).

### A.  The Rule 23 Subclasses

A district court has broad discretion to decide whether to certify a class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (citing *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996)). To be certified, a class must initially satisfy all of Rule 23(a)'s prerequisites – numerosity, commonality, typicality, and adequacy of representation – and then also be of a type recognized in Rule 23(b). *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012). Here, Plaintiffs proceed under Rule 23(b)(3), which requires this Court to conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members" and that a class action is "superior to other available methods." *Whirlpool*, 722 F.3d at 850-51 (6th Cir. 2013) (citation omitted).

In reviewing a Rule 23 motion for class certification, the district court must engage in a

rigorous analysis to determine if all Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). Meaning, the court must do more than apply a deferential standard where it resolves doubts in the movant's favor but requires less than a "dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d at 851-52 (citing *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012)). Thus, the court's findings must be supported by evidence adducing Rule 23's requirements, with any merits analysis limited to resolving whether the Rule 23 prerequisites are satisfied at this stage. *Id.*; *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013).

As an initial matter, Defendants contend that Plaintiffs misrepresent or omit information in their motion for certification. (Doc. No. 38 at PageID# 1450-51.) Specifically, Defendants argue that the motion: (1) erroneously states that workers were required to be in their "assigned work area" at the start of the shift when the tardiness policy states they had to be on the shop floor; (2) overemphasizes time editing practices without reliable evidence that the specific time edited was compensable; (3) misconstrues the deposition testimony of Saraiva by erroneously stating Defendants concede that the biometric scans indicate when a manufacturing employee physically started work; and (4) misstates that uniforms were unable to be donned at home. (*Id.*)

With respect to the dispute over *where* a manufacturing employee must be at the start of his shift, the resolution of this factual dispute does not affect the Court's rigorous analysis relating to certification. Whether the correct location is the shop floor or an assigned working area has no bearing on the ultimate issue of whether a class action is the best mechanism for resolving this compensation dispute.

Defendants next argue that Plaintiffs failed to provide specific and reliable evidence that the time edited was actually compensable. Although a rigorous analysis of class certification

often requires the trial court to "probe behind the pleadings," the Sixth Circuit recognizes that sometimes issues are so straightforward that admissible evidence may not be necessary to rule on certification. *Lyngaas v. Ag*, 992 F.3d 412, 428-30 (6th Cir. 2021). Here, Plaintiffs submitted evidence to support their claims. One example is a spreadsheet listing thousands of instances where Aviva edited time. (Doc. No. 27-1.) Plaintiffs further submitted their own deposition testimony, with each Plaintiff stating that they were required to arrive prior to their start time to don uniforms and protective gear, attend pre-shift meetings, and arrive at their worksites. (Doc. Nos. 15-2 & 15-3.)

To counter Plaintiffs' evidence on when manufacturing employees physically started to work, Defendants rely on Saraiva's 30(b)(6) deposition testimony to undermine the Plaintiffs' assertion that employees began work upon scanning into the building. (*See* Doc. No. 38 at PageID# 1447 (citing AMI Dep. at 72-82, 182-185).) They also rely on Plaintiffs' deposition testimony to demonstrate that all manufacturing employees followed different policies and procedures. (Doc. No. 38 at PageID# 1448 (citing Dorsey Dep. at 20; Murphy Dep. at 16, 23-24.) While there is testimony raising questions about what certain compensable time may be, it is not significant enough to defeat class treatment for the reasons explained *infra*. Defendants attach no other exhibits to their opposition.

Plaintiffs' motion does appear to misconstrue Saraiva's testimony as Aviva's 30(b)(6) witness. The company does not expressly concede that the biometric scans indicate when the individual physically started to work. But again, the resolution of this question is not necessary for the Court's Rule 23 analysis. At this stage, Plaintiffs submitted evidence that work began before a shift started, including that employees were required to arrive early in order to don required protective equipment and other gear, attend pre-shift meetings, and walk to their

assigned location by the start of their shift.  Defendants may overcome Plaintiffs' claims if the evidence does not substantiate when Plaintiffs began their pre-shift activities, but that is a question left for the Court's merits analysis.  *See Amgen*, 568 U.S. at 465-66 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.")  It does not preclude certification.

The Court acknowledges that Murphy, like some other manufacturing employees, occasionally donned his uniform prior to arriving at Aviva's facility.  Defendants' concerns do not account for other protective equipment that they acknowledge manufacturing employees must don while at the facility.  This argument does, however, relate to Murphy's capacity to be the representative plaintiff.  The Court addresses that concern below.

### 1. Ascertainability

Although not included in Rule 23, ascertainability is an "implied requirement that the putative class members can be readily identified based on the class definition." *Tarrify Properties, LLC v. Cuyahoga Cnty., Ohio*, 37 F.4th 1101, 1105-06 (6th Cir. 2022) (quoting *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017)).  A "class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Sandusky Wellness Ctr.*, 863 F.3d at 471 (quotation omitted).  If "mini-trials" become necessary to determine who is a member of the class, the class action vehicle imposes inefficiencies rather than ameliorates them. *Id.* at 471-74.  Courts have found ascertainability satisfied where "the identities of the members of the proposed [subclasses] are identifiable and

ascertainable based on the wage and hours" information maintained by defendant.  *Rapp*, 2021 WL 2982005, at *6.

Defendants argue that Plaintiffs' proposed classes consist of "the exact same set of individuals," so "neither subclass is identifiable and unambiguous."  (Doc. No. 38 at PageID# 1454.)  Defendants thus contend that the subclass definitions are "inherently over-inclusive and overly broad."  (*Id.*)  In reply, Plaintiffs assert that while the subclasses consist of similar individuals, any such overlap reflects how pervasive Defendants' policies were and how they unlawfully affected the manufacturing workforce.  (Doc. No. 41 at PageID# 1470.)

The definitions of the Rule 23 Subclasses are administratively feasible because they are based on objective criteria: job status, hours worked, and unpaid overtime hours.  Plaintiffs seek certification solely for hourly manufacturing employees.  The time editing and time rounding policies applied to all manufacturing employees, and any harm or resulting liability would follow from application of those policies.  Because all hourly manufacturing employees were subject to the same time manipulation policies, both Rule 23 Subclasses are ascertainable.

### 2.  Rule 23(a)

#### a.  Numerosity

The Rule 23 Time Editing Class and the Rule 23 Time Rounding Class each contain approximately 130 members.  (Doc. No. 27 at PageID# 354; *see also* Doc. No. 27-2 at PageID# 682-83 (indicating in Defendants' discovery responses that there were approximately 130 manufacturing employees in the two years preceding the lawsuit).)  Plaintiffs assert that "joinder of all members is impracticable" and that there is no strict numerical test to establish numerosity.  (Doc. No. 27 at PageID# 354.)  Defendants do not respond to this argument in their opposition.  (*See* Doc. No. 38.)

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In *Whirlpool*, the Sixth Circuit held "no strict numerical test exists to define numerosity under Rule 23(a)(1)," but that the class must be a "substantial" number of impacted individuals.  *Whirlpool*, 722 F.3d at 852 (citation omitted).  Although no test exists, courts have held that "a class of 40 or more members raises a presumption of impracticability." *Zehentbauer Fam. Land LP v. Chesapeake Expl., L.L.C.*, No. 4:15-cv-2449, 2018 WL 3496089, at *3 (N.D. Ohio July 20, 2018), *aff'd,* 935 F.3d 496 (6th Cir. 2019).  In the context of a class action regarding failure to pay minimum wages in violation of federal and Ohio law, approximately 100 putative class members was deemed sufficient to satisfy numerosity. *Branning v. Romeo's Pizza, Inc.*, No. 1:19-cv-2092, 2022 WL 986090, at *4 (N.D. Ohio March 29, 2022).  The same is true here.  Both Rule 23 Subclasses are sufficiently numerous.

### b.  Commonality

Plaintiffs' alleged common issues of law and fact presented for the Rule 23 Subclasses are: "(a) whether the class members were subjected to practices or policies resulting in unpaid overtime; (b) whether Aviva's practices or policies resulting in the non-payment of overtime wages are illegal under Ohio law; and (c) the appropriate measure of damages resulting from Aviva's overtime practices or policies."  (Doc. No. 27 at PageID# 356 (citing Doc. No. 18-1 ¶¶ 64-65).)  In support of commonality, Plaintiffs argue that all manufacturing employees were given the same offer letter and signed the same forms; bound by the same employee handbook (although no employees actually received the handbook); required to wear PPE; and subject to the same tardiness policy and timekeeping system.  (Doc. No. 27 at PageID# 356-58.)  Plaintiffs also argue that commonality is established by the thousands of examples in Aviva's punch editing and payroll records.  (*Id.* at PageID# 358.)  Finally, Plaintiffs argue that all

manufacturing employees were party to an agreement to receive overtime pay "at time and a half upon completion of a standard 40-hour workweek."  (*Id.* at PageID# 359 (citing Doc. No. 27-12).)

Defendants argue that Plaintiffs' failure "to develop the facts and legal contentions with enough particularity to prove that there is commonality for the requested subclasses" details their view on why certification is improper.  (Doc. No. 38 at PageID# 1455.)  Defendants say that there are too many variables to consider among the pertinent employees, such as their: positions or departments, precise uniforms or protective gear, specific practices relating to shift meetings and preparatory activities, varied walking distances to workstations, and damages as a result of the timekeeping and editing policies.  (*Id.* at PageID# 1455-56.)  Defendants further argue that Plaintiffs have not demonstrated "a single, unified policy violating Ohio law" common to either the time editing or time rounding subclasses.  (*Id.* at PageID# 1456.)  And if all time editing and rounding simply results in a *de minimis* reduction of compensable time, such practices are not unlawful.  (*Id.*)

Defendants also assert that Plaintiffs' motion relies on an *ad hoc* generalization of their claims, "extrapolating or assuming (without supporting record evidence) that all members of the requested subclasses were affected in the same way."  (*Id.* at PageID# 1457.)  According to Defendants, Plaintiffs' "purported common questions of fact and law fail to show that their claims are capable of class-wide resolution."  (*Id.*)  Individualized determinations are needed for both liability and damages, Defendants urge.  (*Id.* at PageID# 1457-1458.)

Commonality requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A plaintiff's "claims must depend upon a common contention . . . [which is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or

falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 564 U.S. at 350.  Plaintiffs must demonstrate one question common to the class, so long as the resolution of that question "will advance the litigation."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (citation omitted).  Class relief is particularly appropriate when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (citation omitted).

In *Whirlpool*, the plaintiffs sued for tortious breach of warranty, negligent design, and failure to warn with respect to a design defect in Whirlpool's frontloading washing machines. 722 F.3d at 843.  The Sixth Circuit analyzed whether the claims presented common issues to the class by assessing whether common questions were necessary to the resolution of this matter.  *Id.* at 853.  The Sixth Circuit held that whether a design defect proximately caused mildew or whether Whirlpool had a duty to warn customers were essential questions to liability.  *Id.*  The claims may "rise and fall" with those questions common to the class, so commonality was satisfied.  *Id.*

Consistent with *Whirlpool*, commonality here may rest on questions that would be essential to resolve liability for the subclasses: Were class members subject to practices or policies resulting in unpaid overtime?  Did Aviva's practices or policies result in the unlawful non-payment of overtime wages in violation of Ohio law?  What is the appropriate measure of damages resulting from Aviva's overtime practices or policies?

With respect to the Rule 23 Time Editing Class, commonality is satisfied.  Plaintiffs assert that as a result of Aviva's time editing policies, they were not compensated for hours spent working pre- and post-shift donning and doffing equipment, walking to and from their assigned

worksite, and participating in pre- and post-shift meetings.

All manufacturing workers were bound by the tardiness policy that required them to be in their working areas by the start of the shift.  (Doc. No. 27-19.)  The policy effectively required workers to arrive early enough to don protective equipment and walk to their assigned area by the start of their shift.  Plaintiffs presented evidence that demonstrates that once employees biometrically scanned into the building, Aviva later edited their time, failing to capture the time spent doing pre-shift activities.  (*See, e.g.*, AMI Dep. at 81:21-82:2.)  Plaintiffs also presented evidence showing that Aviva edited the end-of-shift times, which failed to capture the time spent doing post-shift activities.

Defendants assert that the time employees scanned into the building is not the beginning of the workday.  Moreover, any such work time is compensated in effect by Aviva's end-of-shift departure policy allowing employees to leave the floor 15 minutes early.  Evidence regarding post-shift activities is not yet fully or clearly developed.  Defendants ultimately may prove that Aviva's manufacturing employees were fully compensated for their time, but for now the issue is more limited, *i.e.*, identifying common questions of law or fact.  *Whirlpool*, 722 F.3d at 853. Plaintiffs have carried their burden with respect to the Rule 23 Time Editing Class because the resolution of common questions of both law and fact are necessary to resolve this matter.

Commonality is also satisfied with respect to the Rule 23 Time Rounding Class.  The principal question with respect to time rounding is simply whether Aviva's policies and practices, in the aggregate, resulted in unpaid overtime that was not *de minimis*.  Defendants urge that courts have found daily periods of approximately ten minutes to be *de minimis*.  Assuming that is so, and that such a result should follow here, then Aviva implicitly acknowledges the existence of a common, potentially dispositive question of law.  Moreover, Plaintiffs submitted

Punch Change Reports showing that manufacturing workers were not paid unless they worked a full eleven-minute increment.  This is sufficient at this stage to indicate a common question of fact as to how much compensable overtime was eliminated by Aviva's rounding practice.  (*See, e.g.*, Doc. No. 27-23 (showing that an employee who worked 8 hours and 10 minutes was only compensated for 8 hours of work).)

Defendants also assert that individual employees' varying job descriptions, responsibilities, and pre- and post-shift tasks preclude a finding of commonality.  This argument is unavailing.  That manufacturing employees may have different job duties during a shift does not defeat Plaintiffs' claim that common practices and questions of law prevail.  Those policies might constitute common proof of causation underlying all class members' claims. *Cf. Young*, 693 F.3d at 543.  In *Young*, plaintiff policyholders alleged that defendants charged them local tax premiums where either the tax was not owed or the amount owed was in excess of the amount billed to the policyholder.  *Id.* at 535.  The defendants challenged commonality because no uniform policy resulted in all of plaintiffs' harms and individualized factual assessments were necessary to ascertain the harm to each policyholder.  *Id.* at 542-43.  The Sixth Circuit held that these types of individualized assessments were not dispositive of the court's commonality analysis, where common questions of causation were central to all plaintiffs' claims and would advance the interests of the class as a whole.  *Id.* at 543.

Here, while individual questions regarding time spent donning protective gear, walking to the shop floor, and attending pre-shift meetings might vary among manufacturing employees, if so that distinction affects how much compensable time was lost for particular groups of employees.  While that distinction may turn out to be significant for measuring the scope of damages, that does not displace common questions of fact and law regarding of liability.

Because common contentions are capable of classwide resolution, the Court finds Rule 23's commonality requirement is satisfied with respect to the Rule 23 Time Rounding Class.

### c.  Typicality

The claims or defenses asserted by the representative parties must be typical of the claims or defenses asserted by the class.  Fed. R. Civ. P. 23(a)(3).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague*, 133 F.3d at 399.  A claim may be typical where "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *In re Am. Med. Sys.*, 75 F.3d at 1082 (citation omitted).

Typicality is necessary to ensure that "the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members."  *Whirlpool*, 722 F.3d 852-53 (citation omitted).  However, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir. 1976)).  Typicality and commonality "tend to merge" because both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Dukes*, 564, U.S. at 349 n.5.  Because of this, courts have found typicality "if the claims or defenses of the representatives and the members of the class stem from a single event *or a unitary course of conduct*."  *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509 (6th Cir. 2015)

(emphasis added) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure* § 1764 (3d ed. 2005)).

Plaintiffs offer evidence that their claims are typical of the Rule 23 Time Editing Class.
The spreadsheet demonstrating the changed hours of manufacturing employees illustrates that
Plaintiffs and class members alike were subject to Aviva's time editing policies irrespective of
the individual circumstances surrounding each worker.  (*See* Doc. No. 27-1.)  Plaintiffs' claims
are also typical of the Rule 23 Time Rounding Subclass.  The timecard editor reports appear to
show that Aviva consistently rounded time contrary to an employee's interest unless an
employee worked a full eleven minutes.  (*See, e.g.*, Doc. No. 27-15, Dorsey Timecard Editor
Report; Doc. No. 27-26, Jesse Lowman Timecard Editor Report.)

Although Defendants argue that different job descriptions and responsibilities may
require factual inquiries into individual claims (Doc. No. 38 at PageID# 1458-59), "differences
in job title do not defeat typicality."  *Kuchar v. Saber Healthcare Holdings LLC*, 340 F.R.D. 115,
122 (N.D. Ohio 2021).  In *Kuchar*, defendants opposed class certification by arguing that the
named plaintiff held different job titles from those in the class.  *Id.*  The court held that the
different titles were immaterial because the dispute centered on whether employees were
underpaid as a result of the defendant's meal break policy.  *Id.*  The same reasoning holds true
here.  Defendants' time editing policies affected all Rule 23 Time Editing Class members.
Moreover, Plaintiffs' claims are typical to the Rule 23 Time Rounding Class members because
Aviva's timekeeping system automatically rounded against all manufacturing employees unless
they worked a full eleven-minute increment.  (AMI Dep. at 177:3-178:2.)

For those reasons, the Plaintiffs' claims are typical of the Rule 23 Time Editing Class and
the Rule 23 Time Rounding Class.

### d.  Adequacy of Representation

Plaintiffs assert that they will adequately represent the interests of both Rule 23 Subclasses because they have "vigorously prosecuted this action and will continue to do so." (Doc. No. 27 at PageID# 361-62.)  Plaintiffs complied with discovery requests.  (*See* Doc. Nos. 27-3 & 24-4.)  They also were deposed.  (*See* Doc. Nos. 15-2 & 15-3.)  Their counsel is qualified to litigate this matter and is experienced in wage-and-hour and class action litigation.  (Doc. No. 27 at PageID# 361.)  Defendants argue that Plaintiffs cannot adequately represent the putative class members' interests because they have failed to establish commonality and typicality.  (Doc. No. 38 at PageID# 1459.)  They also question whether Murphy is an appropriate class representative because he occasionally wore his uniform into work.

The court must determine if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit has set forth a two-pronged test for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *In re Am. Med. Sys.*, 75 F.3d at 1083 (quotation and citations omitted).  In conducting this inquiry, the court "reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation, and consider whether the class members have interests that are not agnostic to one another."  *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (citation omitted).

Defendants argue that Plaintiffs have not established adequacy of representation because they failed to establish commonality and typicality.  The adequacy of representation requirement focuses on the representatives' aligned interests with the class and the likelihood that the

representatives will "vigorously" engage in prosecution, aided by qualified counsel.  In *Beattie*, the Sixth Circuit found that adequacy was satisfied because there was "no indication of a conflict of interest between the named plaintiffs and the class members."  511 F.3d at 563 (quotations omitted).  The Sixth Circuit held that because the named representatives suffered from the same injury as the class, there was "every reason to believe that [class representatives] will vigorously prosecute the interests of the class."  *Id.*  Here, Plaintiffs say they suffered the same injuries as the subclass members – unpaid overtime wages as a result of Aviva editing and rounding Plaintiffs' time – and there is no indication that they will not vigorously prosecute those claims.

Defendants do, however, question whether Murphy is an appropriate representative plaintiff because he testified that some employees, including him, donned their uniform prior to arriving at the facility.  This does not preclude Murphy from adequately representing the interests of the class.  Defendants still acknowledge that PPE other than a uniform must be kept in the workplace and donned at the facility.  (*See* Doc. No. 38 at PageID# 1447.)  And there is no allegation that Murphy was not subject to the same time manipulation policies of the Rule 23 Subclasses.  The Court is satisfied that Dorsey and Murphy adequately represent the interests of the unnamed class members.

Moreover, Plaintiffs' counsel is qualified to represent this matter.  In *Beattie*, the Sixth Circuit found "plaintiffs' counsel is an experienced practitioner in this area" because of the "numerous class action cases in which counsel has participated."  511 F.3d at 563.  The same is true here.  *See, e.g.*, *Rapp*, 2021 WL 2982005, at *10 (finding plaintiff's counsel in this matter to be experienced in the work of class action litigation).  Plaintiffs' counsel is qualified for the reasons stated in the operative motion.

Taken together, adequacy of representation has been established.

### 3.  Rule 23(b)

Having met their Rule 23(a) burden, Plaintiffs must also satisfy at least one Rule 23(b)

requirement.  *Sprague*, 133 F.3d at 397.  Plaintiffs elected to move under Rule 23(b)(3).  (Doc.

No. 27 at PageID# 362.)  Rule 23(b)(3) provides that when Rule 23(a) is satisfied, a class action

may be maintained if:

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently adjudicating
> the controversy.  The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution
>> or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy
>> already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigation of the
>> claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Accordingly, a plaintiff must demonstrate "predominance (that 'the questions of law or

fact common to class members predominate over any questions affecting only individual

members')" and "superiority (that 'a class action is superior to other available methods for fairly

and efficiently adjudicating the controversy')."  *Tarrify Properties*, 37 F.4th at 1105-06 (quoting

*Sandusky Wellness Ctr.*, 863 F.3d at 466).

### a.  Predominance

Because the principal liability issue in this case is whether Aviva's time editing and time

rounding practices resulted in unpaid overtime, Plaintiffs assert that the common issues

predominate over the questions affecting individual members.  (Doc. No. 27 at PageID# 363.)

Defendants argue that Plaintiffs failed to demonstrate predominance because the Court will need

to engage in an individualized analysis of the potential claims of the members.  (Doc. No. 38 at

PageID# 1460.)

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation and citation omitted). Common issues may predominate when liability can be determined on a class-wide basis despite the existence of individualized damages issues. *Id.*

As discussed, *supra*, resolution of Plaintiffs' claims involves the following common questions: (a) whether class members were subject to practices or policies that resulted in unpaid overtime; (b) whether Aviva's practices or policies that resulted in the non-payment of overtime wages were unlawful; and (c) the appropriate measure of damages resulting from Aviva's overtime practices or policies. Again, these questions can be determined through common proof that is applicable to the putative class as a whole.

While Defendants argue that predominance cannot be satisfied because the Court will have to make individualized determinations with respect to liability and damages, predominance can be found despite individual inquiries where "the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices." *Branning*, 2022 WL 986090, at *7 (quoting *Waters v. Pizza to You, LLC*, No. 3:19-cv-372, 2021 WL 229040, at *9 (S.D. Ohio Jan. 22, 2021)); *see also Stephenson v. Family Solutions of Ohio, Inc.*, No. 1:18-cv-2017, 2021 WL 1253459, at *20-21 (N.D. Ohio Apr. 5, 2021), (finding predominance despite facts and circumstances surrounding class members' employment with the company varying), *motion to certify appeal denied,* 2022 WL 393924 (N.D. Ohio Feb. 9, 2022). In *Branning*, plaintiffs

brought a Rule 23 class action and an FLSA collective action against a pizza company for failure to properly reimburse delivery drivers.  2022 WL 986090, at *1-2.  The court found that the common claim predominated because the drivers were subject to the same reimbursement policy. *Id.* at *7.  Therefore, liability turned on whether defendants paid that rate, and the damages resulted from the same conduct common to the class.  *Id*.

The common questions predominate here.  For example, if all manufacturing employees (regardless of title or task) wore some form(s) of protective equipment, and if all manufacturing employees arrived early enough to don that equipment and be in place as of their shift start time, then a key question common to all class members' claims will be whether or not donning that equipment is integral to their job.  If all manufacturing employees were in theory allowed to leave 15 minutes before their shift end time, but in practice rarely did so, then important common questions arise: Can Aviva credibly establish that the 15-minute early departure period was genuinely designed to (or in practice actually did) compensate employees for their pre- and post-shift obligations?  How was Aviva's time-rounding procedure applied, and what were its effects on aggregate compensation?  In the end, liability turns on whether Aviva's time editing and rounding policies resulted in unpaid wages.  Accordingly, common questions outweigh questions affecting only individual putative class members and Rule 23(b)(3)'s predominance requirement is satisfied as to the Rule 23 Subclasses.

### b.  Superiority

Plaintiffs assert that the superiority requirement is satisfied because no other actions against Aviva alleging overtime violations are pending, all putative class members worked in a facility in this district, and the class is narrowly defined to limit individual inquiries.  (Doc. No. 27 at PageID# 363-64.)  Plaintiffs also aver that manufacturing workers lack the resources to

bring individual suits against Aviva for overtime violations.  (*Id.* at PageID# 364.)  Again, Defendants assert that individual inquiries necessitate that the superiority requirement is not met. (Doc. No. 38 at PageID# 1460.)

To be certified, a class claim must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  District courts must consider: the interests of class members in individually controlling the prosecution or defense of separate actions; the extent and nature of other pending litigation about the controversy by members of the class; the desirability of concentrating the litigation in a forum; and the difficulties in managing the class action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Young*, 693 F.3d at 545 (quoting *Amchem Prod. Inc.*, 521 U.S. at 617).

Although it is a separate inquiry from predominance, superiority can be satisfied "even though other important matters will have to be tried separately, such as damages or some affirmative defenses particular to some individual class members."  *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 464 (6th Cir. 2020) (quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure*, § 1778, at 123-24).  "Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."  *Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007); *see also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988) (acknowledging an "increasingly insistent need" to certify class actions for lawsuits arising out of a "single course of conduct").

There is no evidence to suggest that members of the Rule 23 Subclasses have an interest in controlling the prosecution of separate actions.  As noted by Plaintiffs, the underlying wages

at issue for each class member may be modest, diminishing the individual members' ability or incentive to pursue their own separate actions.  *See, e.g., Stephenson*, 2021 WL 1253459, at *22. There is no evidence of other pending litigation addressing this dispute.  And there is no showing that the Court will have difficulty in managing this class action.  Superiority is satisfied.

For the foregoing reasons, Plaintiffs' motion for Fed. R. Civ. P. 23 Class Certification is GRANTED as to both the Rule 23 Time Editing Subclass and the Rule 23 Time Rounding Subclass.

### B.  The FLSA Subclasses

#### 1.  Legal Standard for Conditional Certification

The FLSA was enacted with "broad remedial intent" aimed at addressing unfair methods of competition in commerce that create "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Keller v. Miri Microsystems, LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (internal citation omitted). With this purpose in mind, the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).

FLSA collective actions, unlike Rule 23 class actions, require each employee to "opt in." The opt-in requirement provides a gatekeeping function because only those similarly situated employees are permitted to opt in.  Once an employee has opted in, they become a party plaintiff, unlike absent class members in a Rule 23 class action.  *O'Brien v. Ed Donnelly Enters., Inc.* 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 1365 S.Ct. 663 (2016).

In evaluating who is "similarly situated" for purposes of maintaining a collective action,

courts in this district generally use a two-stage approach. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). In the first stage, the court looks to the pleadings or some limited discovery to determine "whether to conditionally certify the collective class and whether notice of the lawsuit should be given to putative class members." *Arends v. Family Solutions of Ohio, Inc.*, No. 1:18-cv-2017, 2019 WL 4417674, at *4 (N.D. Ohio Sept. 16, 2019) (citation and quotation omitted). Generally, the standard that Plaintiffs must satisfy for conditional certification is a lenient one. *King v. Bailey's Quality Plumbing & Heating, LLC*, No. 5:20-cv-571, 2021 WL 925809, at *3 (N.D. Ohio Mar. 11, 2021) (citing *Barker v. Stark Cnty.*, 5:19-cv-276, 2020 WL 1288807, at *2 (N.D. Ohio Mar. 18, 2020)). It is the lead plaintiff who bears the burden of demonstrating that the proposed class members are similarly situated to him and that his proposed FLSA collective action should proceed. *See O'Brien*, 575 F.3d at 584.

If a lead plaintiff successfully demonstrates that the proposed class members are sufficiently similar to him, then the class is conditionally certified. Notice to potential class members follows, as does full discovery. After this occurs, the Court moves to stage two. In stage two, the Court conducts a thorough review of the record and makes a final determination whether the opt-in class members are similarly situated to the lead plaintiff. *Comer*, 454 F.3d at 546; *see also Marek v. Toledo Tool & Die*, No. 3:16-cv-3005, 2017 WL 5891765, at *2-3 (N.D. Ohio Nov. 29, 2017).

"In order to establish that other employees are similarly situated to the named plaintiff, the named plaintiff need only show that his position [is] similar, not identical, to the positions held by putative class members." *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) (internal quotation marks omitted); *see also Comer* 454 F.3d at 546-47. Meaning, the lead plaintiff's stated basis for a FLSA collective action accrued in approximately

the same manner as other potential class members.

Suffering from a single, FLSA-violating policy that is applied to all can be sufficient proof that the plaintiffs are similarly situated to the collective. *O'Brien*, 575 F.3d at 585. It is not required, though. *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017). Separately, claims "unified by common theories of defendants' statutory violations, even if proofs of these theories are inevitably individualized and distinct," may also support a determination that the plaintiffs are similarly situated. *Id.* (rejecting defendant's assertion that individual assessments of each violation rendered conditional certification improper). As the Sixth Circuit recognized in *Monroe*, sufficient proof of either one supports a determination that the lead plaintiff and collective members are similarly situated. *Id.*

We are in stage one. And while a lead plaintiff can successfully demonstrate similarity during stage one based on allegations in the complaint alone, when, as is the case here, the parties have engaged in discovery on the issue of conditional certification, the lead plaintiff must satisfy a slightly heightened "modest plus" standard. *Weisgarber v. North Am. Dental Grp., LLC*, No. 4:18-cv-2860, 2020 WL 1322843, at *2. (N.D. Ohio Mar. 20, 2020). While still more lenient than what is required in stage two, the modest plus standard requires an elevated factual showing that is "beyond what is alleged in the pleadings." *Id.* Accordingly, the court looks for "some progress as a result of the discovery" to ascertain the similarity between those who might opt into the class and the representative plaintiff. *See Sholtz v. Emergency Med. Transp., Inc.*, No. 5:20-cv-2328, 2021 WL 4756994, at *3 (N.D. Ohio April 22, 2021) (quoting *Bentz v. UC Synergetic LLC*, No. 2:16-cv-2700, 2018 WL 4677786, at *2 (W.D. Tenn. Sept. 28, 2018)).

Under this modest plus standard, the court considers the parties' evidence and other factors typically addressed during stage two, including "(1) the disparate factual and employment

settings of the individual opt-in plaintiffs; (2) the various defenses available to defendants with respect to individual plaintiffs; and (3) fairness and procedural concerns." *Weisgarber*, 2020 WL 1322843, at \*2 (citing *Jungkunz v. Schaeffer's Inv. Rsch., Inc.*, No. 1:11-cv-691, 2014 WL 1302553, at \*7 (S.D. Ohio Mar. 31, 2014)).

The modest plus standard "is still meant to be lenient, resolving any gaps or doubts in the evidence in favor of plaintiffs." *Sholtz*, 2021 WL 4756994, at \*3 (internal citation and quotation omitted). During conditional certification, a court "does not generally consider the merits of the claim, resolve factual disputes, or evaluate credibility." *Id.* (citation omitted). This is true even when the court, like this one, is evaluating conditional certification under the modest plus standard. *Weisgarber*, 2020 WL 1322843, at \*3 (citing *Boyd v. Schwebel Baking Co.*, No. 4:15-cv-871, 2016 WL 3555351, at \*3 (N.D. Ohio June 30, 2016)).

The decision to conditionally certify a class is within the discretion of the trial court. *Comer*, 454 F.3d at 546. If conditional certification is granted, solicitation of opt-in plaintiffs is permitted, under court supervision. *Cox v. Healthcare Services Group, Inc.*, No. 3:13-cv-293, 2013 WL 2443785, at \*2 (N.D. Ohio June 4, 2013).

### 2. Discussion

Defendants' attempts to defeat conditional certification are unavailing. At the outset, their reliance on Plaintiff's alleged failure to identify a single, FLSA-violating policy ignores established case law explaining that a single, violating policy is just one way to support a finding that the plaintiffs are similarly situated. And, as Plaintiffs point out, they have identified Aviva policies that support such a showing of similarity, namely that all were subject to the same rounding and editing policies. They even submit record evidence to support this assertion. (*See*, Doc. No. 27-1 (demonstrating time editing); Doc. Nos. 27-23 & 27-24 (demonstrating time

rounding).)

For the FLSA Time Editing Class, members were subject to time editing practices that allowed Aviva to edit shift times rather than account for the necessary pre-and post-shift work. (*See* Doc. No. 27-1 (demonstrating biometric scan times were uniformly edited).)  The FLSA Time Rounding Class members saw their compensable time rounded to the nearest 10 minutes in a way that is alleged to have consistently resulted in lost wages and unpaid overtime.  (*See, e.g.*, Doc. Nos. 27-23 & 27-24.)  Plaintiffs rely on Aviva's payroll records to demonstrate that Aviva uniformly edited and rounded manufacturing employees' time.  (Doc. Nos. 27-1, 27-23 & 27-24; *see also* AMI Dep. at 198:3-200:19 (confirming manufacturing employee's earnings statement did not include edited time).)

In attempting to defeat a finding that the plaintiffs' claims are premised on common theories of statutory violations, Defendants again attempt to direct this Court to where there are differences among manufacturing employees.  For the reasons stated above, the variations in title, assignment, or position among manufacturing employees do not preclude a finding that these employees share similar claims relative to editing and rounding practices.

With respect to the FLSA Time Editing Class, all manufacturing workers utilized the biometric scanners to begin work, which the Paycom system captured.  (AMI Dep. at 75:10-21.)  The Aviva "Time Reporting Policy" specifically required employees to be at their assigned work area at the start of their shift.  (AMI Dep. at 81:5-13, 144:18-21, 147:18-149:1.)  Prior to the shift starting time, Aviva manufacturing employees donned PPE.  Although in some instances employees were permitted to take their uniform home, they were not allowed to take home other protective gear.  (AMI Dep. at 144:22-145:11; Dorsey Dep. at 19:10-15, 21:24-22:15; Murphy Dep. at 20:24-21:10, 31:4-33:9.)  After donning PPE, the manufacturing workers walked to their

shift starting location or the shop floor.  (Dorsey Dep. at 24:12-14; AMI Dep. at 83:22-84:3.)
Workers also regularly attended pre-shift meetings.  (Murphy Dep. at 33:19-34:14; 53:8-14;
Dorsey Dep. at 24:22-26:17.)  And after their shift, manufacturing workers were required to doff
their PPE and often attended post-shift meetings.  (*See* Dorsey Dep. at 31:18-23; Murphy Dep. at
45:1-48:25.)  Plaintiffs argue the evidence, and specifically the spreadsheet denoting punch time
changes, demonstrates that Aviva altered the time they clocked in and out to reflect the actual
shift starting and ending times and, accordingly, Plaintiffs were not paid for such activity.  (*See*
Doc. No 27-1.)

As for the FLSA Time Rounding Class, Plaintiffs state that Aviva rounded manufacturing
employees' time down unless they worked for a full eleven extra minutes.  (AMI Dep. at 177:3-
178:2.)  Aviva's records demonstrate just that – when those employees did not work a full eleven
minutes, their time was rounded down.  (*See, e.g.*, Doc. No. 25-15 (demonstrating Dorsey was
not compensated when he failed to work a full eleven minutes); Doc. No. 27-23 (demonstrating
that an employee who worked 8 hours and 10 minutes was only compensated for 8 hours).)
Accordingly, Plaintiffs argue that the evidence shows that they are similarly situated to the FLSA
Time Rounding Class.

Remaining focused on individual considerations that defeat a finding that Plaintiffs are
similarly situated, Defendants seem to suggest that the identical numerical size of the proposed
FLSA Subclasses precludes a finding that members are similarly situated.  This is not so.
Plaintiffs state that there are 130 employees who were subjected to Aviva's time editing and time
rounding practices.  The fact that the FLSA Subclasses are of the same size or comprised of the
same members is irrelevant to the determination of whether Aviva manufacturing employees
were subjected to the same time editing or rounding practices as Plaintiffs.  What the subclass

definitions demonstrate, and what is supported by record evidence, is that manufacturing employees, including Plaintiffs, may have been harmed by the same two distinct practices or policies.

And in line with this point concerning the same 130 manufacturing employees in both FLSA Subclasses, whether or not individualized determinations may later reveal that these workers are not entitled to overtime pay based on some unique employment characteristic is not a question to be answered at the first stage of conditional certification.  Plaintiffs have submitted evidence demonstrating that the time editing and rounding policies affected manufacturing employees sufficiently similarly regardless of their job description.  *See, e.g.*, *Lawrence v. Maxim Healthcare Servs., Inc.*, No. 1:12-cv-2600, 2013 WL 5566668, at *2 (N.D. Ohio Oct. 9, 2013) (finding "the similarity of Plaintiff and the collective classes' job description and duties are not dispositive on whether to conditionally certify the collective action" where plaintiffs demonstrated that the putative class suffered from an FLSA-violating policy.)

Regarding the FLSA Time Editing Class, Defendants argue that the time spent donning and doffing equipment, even if compensable, is either *de minimis* or offset by Aviva's end of shift policy that allotted 15 minutes to remove protective gear.  The Court recognizes that if the time spent proves to be very short, the uncompensated time may be *de minimis*.  *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012) (citing *Hill v. United States*, 751 F.2d 810, 814 (6th Cir. 1984)) ("A *de minimis* rule applies when 'the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours.'").  However, the Court does not consider whether that time is *de minimis* at this juncture.  *See Roberts v. J.R. Eng'g, Inc.* No. 5:19-cv-00110, 2019 WL 5653340, at *7 (N.D. Ohio Oct. 31, 2019) (citing *Murton v. Measurecomp, LLC*, No. 1:07-cv-3127, 2008 WL 5725631, at *5 (N.D. Ohio June 9,

2008)) (holding "it is well settled that no merits-based inquiry is appropriate" at the conditional certification stage, which includes an "inquiry into the *de minimis* nature of any alleged violations"). The same is true for Defendants' arguments that the time is offset by its end-of-shift policy. *Slaughter v. Lincoln Elec. Co.*, No. 1:18-cv-2705, 2019 WL 4934508, at *7 (N.D. Ohio Oct. 7, 2019) ("Defendant's substantive arguments that its policies and procedures do not, in fact, violate the FLSA go the merits of the instant action and are not properly considered at the conditional certification stage.").

Having determined that potential variations among Plaintiffs' employment experiences do not defeat a finding of "similarity," the same conclusion is reached with respect to various defenses available to Defendants. Common themes prevail. Challenges to editing and rounding practices, while they may result in a different numerical calculation, are still the same. And it is clear that resolving this wage dispute for all manufacturing employees in this case is in line with stated fairness and procedural concerns. *Monroe*, 860 F.3d at 405.

Accordingly, Plaintiffs are similarly situated to the FLSA Time Editing Class and the FLSA Time Rounding Class. The motion to conditionally certify the FLSA Subclasses is GRANTED.

### III. Appointment of Class Counsel

Plaintiffs seek to have their counsel appointed as class counsel under Rule 23(g). (Doc. No. 27 at PageID# 366-67.) Defendants did not oppose this request. (*See* Doc. No. 38.) Court approval of class counsel is necessary. Fed. R. Civ. P. 23(g). As discussed above, Plaintiffs' counsel has: identified and investigated the claims of this case; litigated collective wage-and-hour cases as well as class actions; demonstrated knowledge of the applicable laws; and shown a willingness to commit the necessary resources to prosecute the claims of the Rule 23 Subclasses.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Accordingly, Plaintiffs' counsel of record meets the requirements of Rule 23(g).  Plaintiffs' motion for the appointment of class counsel is GRANTED.

### IV.    Notice to Class Members and Potential Opt-In Class Members

Plaintiffs move for approval of the proposed combined class/collective action notice (Doc. No. 27-7), proposed consent form (Doc. No. 27-8), and proposed cover email to be sent to potential class members (Doc. No. 27-9).  The Court ORDERS Plaintiffs and Defendants to meet and confer to determine whether a mutually agreeable class/collective member notification process can be submitted to the Court for approval.  The Court ORDERS the parties to report to the Court within 21 days with jointly approved forms or by specifying for the Court areas of disagreement regarding the proposed notice, consent form, or cover email.

### V.    Conclusion

For the foregoing reasons, Plaintiffs' motion for Fed. R. Civ. P. 23 Class Certification, Conditional Certification Pursuant to 29 U.S.C. § 216(b), and Appointment of Class Counsel is GRANTED.  This Court certifies the *Rule 23 Time Editing Class* pursuant to Fed. R. Civ. P. 23 as defined as:

> All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time edited.

This Court certifies the *Rule 23 Time Rounding Class* pursuant to Fed. R. Civ. P. 23 as defined as:

> All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours

worked by virtue of having their time rounded pursuant to Aviva Metals, Inc.'s 10-minute rounding policy.

This Court conditionally certifies the *FLSA Time Editing Class* pursuant to 29 U.S.C. § 216(b) as

defined as:

> All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2017 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time edited.

This Court conditionally certifies the *FLSA Time Rounding Class* pursuant to 29 U.S.C. § 216(b)

as defined as:

> The "FLSA Time Rounding Class": All present and former hourly manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2017 to the present who (1) worked more than forty (40) hours during one or more workweeks, and (2) were not paid for all overtime hours worked by virtue of having their time rounded pursuant to Aviva Metals, Inc.'s 10-minute rounding policy.

The Court appoints and designates Plaintiffs' counsel, attorneys Joseph F. Scott, Ryan

Winters, and Kevin McDermott II, all of Scott & Winters Law Firm, as class counsel.  Plaintiffs

Donald Dorsey and Craig Murphy are the representatives for the Rule 23 Subclasses and FLSA

Subclasses.

Plaintiffs and Defendants are ordered to meet and confer within 21 days of the date of

this Order and submit to the Court jointly approved forms or specify the areas of disagreement

regarding the proposed notice, consent form, or cover email.

Defendants shall, within 21 days of the date of this Order, provide plaintiffs with a list of the full names and last known home addresses of each current and former employee fitting the class descriptions, their dates of employment, and their last known personal email addresses. The list shall be produced electronically and in hard copy.  This list should not be filed with the Court.

**IT IS SO ORDERED.**

Date: September 28, 2022

_____

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE