UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD DORSEY, *et al.*, | ) | |
| *On behalf of themselves and all others similarly situated,* | ) ) ) | Case No. 1:20-cv-02014 |
| Plaintiffs, | ) ) | JUDGE BRIDGET M. BRENNAN |
| *v.* | ) ) ) | |
| AVIVA METALS, INC., *et al.,* | ) ) | |
| Defendants. | ) ) | |

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiffs Donald Dorsey and Craig Murphy (hereinafter also collectively referred to as "Plaintiffs") and Aviva Metals, Inc. and Joao C.F. Saraiva (hereinafter also collectively referred to as "Defendants" or "Aviva Metals") respectfully and jointly move the Court to (1) preliminarily approve the proposed settlement of Settlement Class Members' claims pursuant to Fed. R. Civ. P. 23(e), (2) approve a proposed notice to potential Settlement Class Members; (3) modify the previously-certified class definitions for settlement purposes, and (4) schedule a Fairness Hearing. A Proposed Order Granting Preliminary Approval of Settlement is attached as Exhibit C. The Parties' Memorandum in Support of this motion is attached below.

Respectfully Submitted,

_s/ Kevin M. McDermott II_
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

_Attorneys for Plaintiffs and Class Counsel_

_s/ Mark S. Fusco (via email consent)_
Mark S. Fusco (Reg. No. 0040604)
   Direct Dial: 216-619-7839
   Email: mfusco@walterhav.com
Jessica L. MacKeigan (Reg. No. 0087121)
   Direct Dial: 216-928-2928
   Email: jmackeigan@walterhav.com
P: 216-619-7839
**WALTER | HAVERFIELD LLP**
The Tower at Erieview
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114
Phone: 216-781-1212/Fax: 216-575-0911

_Attorneys for Defendants_

### TABLE OF CONTENTS

Table of Contents ........................................................................................................ iii

Table of Authorities ..................................................................................................... v

Memorandum in Support ............................................................................................. 1

I.      Introduction ................................................................................................. 1

II.     The Litigation .............................................................................................. 3

        A.      The Claims and Issues ..................................................................... 3

        B.      Class Certification ........................................................................... 4

        C.      Investigation, Discovery, Document Analysis, and Research ................ 5

        D.      Settlement Negotiations ................................................................... 6

III.    The Terms of the Settlement and Release of Claims ........................................ 6

        A.      The Scope of Settlement .................................................................. 6

        B.      The Proposed Settlement Payments and Distributions ......................... 7

IV.     The Propriety of Approval ............................................................................ 10

        A.      The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b) ....................................................................... 10

        B.      The Proposed Settlement Qualifies for Preliminary Approval under Rule 23 ..... 13

                1.      Approval of the Proposal Under Civil Rule 23(e)(2) ............................... 14

                        a.      Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A) ............................................... 15

                        b.      Arm's Length Negotiation – Rule 23(e)(2)(B) ............................ 15

                        c.      The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i) ......................... 16

                        d.      The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii) ......... 17

                        e.      The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii) ........ 18

f.      The Relief is Adequate, Taking into Account Agreements
        Required to be Identified under Rule 23(e)(3) – Rule
        23(e)(2)(C)(iv) ........................................................................... 22

g.      The Settlement Treats Class Members Equitably Relative to Each
        Other – Rule 23(e)(2)(D) ........................................................... 22

2.      Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii) ..................... 22

C.      The Service Awards are Proper and Reasonable .................................................. 27

D.      The Proposed Notice Should Be Approved – Rule 23(c)(2)(B) .......................... 29

V.      Conclusion ............................................................................................................. 30

Certification of Compliance.......................................................................................... 32

Certificate of Service .................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ................ 26

*Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474 (N.D. Ohio Oct. 17, 2018) ............................................................................................................ 21

*Arlington Video Prods. v. Fifth Third Bancorp*, 515 F.App'x 426 (6th Cir.2013) ...................... 24

*Barnes v. Winking Lizard, Inc.*, N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657 (Mar. 26, 2019) ...................................................................................... 16, 20, 22

*Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201 (Nov. 15, 2019) .......................................................................... 26

*Blum v. Stenson*, 465 U.S. 886 (1984) .......................................................................... 19

*Bredbenner v. Liberty Travel, Inc.*, D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663 (Apr. 8, 2011) ............................................................. 27

*Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730 (Nov. 8, 2018) .................................................................................... 20

*Busby v. Bonner*, W.D.Tenn. No. 2:20-cv-2359-SHL-atc, 2021 U.S. Dist. LEXIS 173421 (Jan. 28, 2021) ......................................................................... 14

*Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221 (July 27, 2018) ............................................................................ 20

*City of N. Royalton v. McKesson Corp. (In re Nat'l Prescription Opiate Litig.)*, 976 F.3d 664 (6th Cir. 2020) ........................................................................... 23

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08–CV–1119, 2011 WL 292008 (S.D.Ohio Jan.26, 2011) ........................................................................ 19

*Cooper v. Winking Lizard, Inc.*, N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237 (Oct. 4, 2017) ....................................................................... 11

*Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070 (Oct. 23, 2008) ................................................................ 11

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ................................................ 27

*Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J.2010) .................................................. 27

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.

LEXIS 20446 (Mar. 8, 2010) ................................................................................ 19, 21, 25

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ................. 29

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ........................................................... 18

*Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist.
LEXIS 117220 (July 2, 2020) ......................................................................... 14

*Frye v. Baptist Mem'l* Hosp., Inc., 495 F. App'x 669 (6th Cir. 2012) ............................ 24

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887
(June 24, 2011) ............................................................................................ 11

*Glazer v. Whirlpool Corp*., 678 F.3d 409 (6th Cir.2012) ........................................... 13

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ............................ 11

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................... 12, 15

*Hebert v. Chesapeake Operating, Inc*., S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist.
LEXIS 160792 (Sep. 20, 2019) ..................................................................... 20

*Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist.
LEXIS 148275 (Oct. 26, 2016) ..................................................................... 11

*Hemphill v. San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616 (S.D.Cal. 2005) ........................ 16

*Herrera v. Wells Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS (MRWx), 2021 U.S.
Dist. LEXIS 170195 (June 8, 2021) ............................................................... 14

*Hunter v. Booz Allen Hamilton Inc.,* No. 2:19-cv-00411, 2023 U.S. Dist. LEXIS 76859
(S.D. Ohio May 2, 2023) ............................................................................. 27

*In re Am. Med. Sys., Inc*., 75 F.3d 1069 (6th Cir. 1996) ..................................... 15, 25

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ....................... 12

*In re Dun & Bradstreet Credit Servs. Customer Litigation,* 130 F.R.D. 366 (S.D.Ohio
1990) ........................................................................................................ 28

*In re Monumental Life Ins. Co*., 365 F.3d 408 (5th Cir.2004) ................................... 24

*In re MyFord Touch Consumer Litig*., 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 29,
2019) ........................................................................................................ 14

*In re Toys R Us Antitrust Lit*., 191 F.R.D. 347 (E.D.N.Y. 2000) ............................... 16

*Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp*., 497

F.3d 615 (6th Cir. 2007) .......................................................................................... 11

*Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650
(N.D.Ohio 2008) ................................................................................................... 19

*Jackson v. Trubridge, Inc.,* N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782
(N.D.Ohio Jan. 26, 2017) ............................................................................... 10, 13

*Kritzer v. Safelite Solutions, LLC,* 2012 U.S. Dist. LEXIS 74994 (S.D.Ohio May 30,
2012) ............................................................................................................ passim

*Kuchar v. Saber Healthcare Holdings, LLC,* N.D.Ohio No. 1:20-cv-02542, 2021 U.S.
Dist. LEXIS 127859 (July 9, 2021) ...................................................................... 24

*Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June
16, 2008) .............................................................................................................. 11

*Lonardo v. Travelers Indemnity Co.,* 706 F. Supp. 2d 766 (N.D.Ohio 2010) ....................... 13, 19

*Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982)................................. 11

*Macaluso v. Zirtual Startups, LLC,* S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS
154243 (Aug. 17, 2021) ....................................................................................... 20

*McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D.Ohio 2007) ................................. 19

*McGrothers v. GT Pizza, Inc.,* No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270 (S.D.
Ohio Nov. 9, 2022) ............................................................................................... 27

*Noll v. Flowers Foods Inc.,* No. 1:15-cv-00493-LEW, 2022 U.S. Dist. LEXIS 75349 (D.
Me. Apr. 26, 2022)................................................................................................ 14

*Osman v. Grube, Inc.,* N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222
(N.D.Ohio May 4, 2018)................................................................................... 11, 20

*Padovano v. FedEx Ground Package Systems,* 2019 U.S. Dist. LEXIS 107092
(W.D.N.Y. June 10, 2019) .................................................................................... 14

*Powers v. Hamilton Cty. Pub. Def. Comm'n,* 501 F.3d 592 (6th Cir. 2007) .............................. 23

*Rawlings v. Prudential-Bache Properties,* 9 F.3d 513 (6th Cir.1993) ................................... 19, 20

*Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL
3981461 (N.D. Ohio August 22, 2008)..................................................................... 11

*Reed v. Rhodes,* 179 F.3d 453 (6th Cir. 2008) .......................................................................... 19

*Rotuna v. W. Customer Mgt. Group, LLC,* N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist.
LEXIS 58912(June 15, 2010) ...................................................................... 18, 20, 27

vii

*Rudi v. Wexner*, S.D.Ohio No. 2:20-cv-3068, 2022 U.S. Dist. LEXIS 98299 (May 16, 2022) ............................................................................................................... 21

*Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) .................................................... 27

*Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748 (7th Cir.2005) ................................. 23

*Shanahan v. KeyBank, NA*, No. 1:19cv2477, 2021 U.S. Dist. LEXIS 50516 (N.D. Ohio Mar. 16, 2021) ............................................................................................ 27

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584 (Mar. 13, 2017) ........................................................................... 11, 13

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) ....... 21

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450 (July 11, 2014) ................................................................................................. 19

*Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) ........... 14

*Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391 (Sep. 12, 2007) ................................................................................................................ 26

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ...................... 19

*Wright v. Premier Courier, Inc.,* No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019 (S.D. Ohio Aug. 17, 2018) ....................................................................................... 20

*Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532 (6th Cir. 2012) .................................. 15, 25, 26

**Statutes**

29 U.S.C. § 207 ................................................................................................................... 3

29 U.S.C. § 216 .......................................................................................................... passim

O.R.C. § 4111.03 ........................................................................................................... 1, 3

O.R.C. § 4111.10 ........................................................................................................... 3, 18

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... passim

Fed. R. Civ. P. 30 ......................................................................................................... 5, 28

**Other Authorities**

3 Newberg and Rubenstein on Class Actions § 7:37 (6th ed.) ..................................................... 24

5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) .................................................... 27

Ann. Manual Complex Lit. § 21.312 (4th ed.).......................................................................... 2

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends
    III: What Explains Settlements in Shareholder Class Actions? (National
    Economic Research Assocs. (NERA) June 1995) ..................................................... 19, 21

<u>**MEMORANDUM IN SUPPORT**</u>

## I.     INTRODUCTION

The *Class/Collective Action Settlement and Release Agreement* ("Settlement" or "Settlement Agreement"), attached to this Motion as Exhibit A, calls for an opt-out Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to overtime wage law claims. The Settlement will apply to Plaintiffs and to all other members of the proposed Fed. R. Civ. P. 23 Settlement Class (referred to as "Settlement Class" or "Class Members"), defined as:

> All present and former hourly non-exempt manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 until September 28, 2022, and who did not previously exclude themselves from this action.

(*see* Settlement Agreement, Ex. A at 3). In addition, this Settlement covers Plaintiffs' and FLSA Collective Action Members' overtime claims, individuals who previously provided consent forms to become party opt-in Plaintiffs in this case ("FLSA Collective Action Members'"), defined as:

> All present and former hourly non-exempt manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location who have given timely consent in writing to become a party Plaintiff in the Action, and whose opt-in consent form was filed in this matter on or prior to May 1, 2023.

(*Id.* at 3.)

The Settlement, achieved with the assistance of highly respected attorney and mediator Michael Ungar, resolves *bona fide* disputes involving overtime compensation under the FLSA and corresponding provisions of Ohio wage-and-hour law, O.R.C. § 4111.03. Plaintiffs alleged that they and other hourly employees of Aviva Metals are owed unpaid overtime compensation. (*See* ECF #28, Am. Compl. at ¶¶ 23-49.) Defendants denied Plaintiffs' amendment and claims, and asserted affirmative defenses. (*See* ECF #32, Defs.' Answer to Am. Compl.)

Class Members will receive notice of the settlement reached in this matter containing, among other pertinent information, the nature of the action; the definition of the class certified for settlement purposes; a summary of the claims, issues, and defenses; the benefits provided to class representatives; information regarding attorney's fees; notice that Class Members may enter an appearance through an attorney if they so desire; notice to Class Members that the court will exclude from the class any member who requests exclusion;[1] identification of the time and manner for requesting exclusion; and an explanation of the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. B, Proposed Notice.) Furthermore, Class Members will receive a tailored notice that identifies each Class Member's participation in the settlement class, as well as provides for each recipient class member their projected individual settlement payment amount (*see* Ann. Manual Complex Lit. § 21.312 (4th ed.) (noting that a class notice should provide information that will enable the Class Members to calculate individual recoveries)), and prominently displays the address and telephone number of Class Counsel and the Administrator and the procedure for making inquiries. (*Id.*) Each Class Member will receive notice so that all Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendants. (*Id.*)

The case was hotly contested and settlement was achieved only after prolonged discovery and difficult negotiations, data production and comprehensive analysis of relevant records, and two days of mediation before mediator Michael Ungar. The Settlement is fair, reasonable, and adequate and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b), and Rule

---

[1] Although class members were previously provided an opportunity to request exclusion at the time this Court certified this matter (*see* ECF #44, Order Granting Class/Collective Certification; ECF #47, Marginal Order approving revised notice to class members), the proposed Class Notice nevertheless "affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

23(e). If approved by the Court, the Settlement will provide individual settlement payments to Class Members representing a substantial percentage of their claimed damages.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit A: | Class/Collective Action Settlement and Release Agreement ("Settlement Agreement"); |
| Exhibit B: | Proposed Notice of Class Action Settlement; |
| Exhibit C: | Proposed Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order," providing for notice and hearing); and |
| Exhibit D: | Declaration of Class Counsel. |

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## II.    THE LITIGATION

### A.    The Claims and Issues

Plaintiffs Donald Dorsey and Craig Murphy commenced this action on September 8, 2020 against Defendant Aviva Metals, Inc. seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.,* and the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. §§ 4111.01, *et seq.* (Compl., ECF #1.) Plaintiffs' Complaint alleged that they and other similarly situated employees were willfully not paid for all time worked, including compensable time at the beginning and end of their shifts, as a result of Defendant Aviva Metals, Inc.'s alleged unlawful time editing policies, and were owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*Id.* at ¶¶ 18-34, 53-65.) Defendant Aviva

Metals, Inc. denied Plaintiffs' claims and asserted affirmative defenses. (*See generally* ECF #10, Def. Aviva Metals, Inc.'s Answer to Compl.)

Plaintiffs filed a motion for leave to file an amended complaint on July 6, 2021 (ECF #18.) On August 16, 2021, the Court entered a memorandum opinion and order granting Plaintiffs' motion for leave to file an amended complaint. (ECF #25.) On August 27, 2021, Plaintiffs filed their Plaintiffs' First Amended Class and Collective Action Complaint ("Amended Complaint"), which added Joao C.F. Saraiva as an individual Defendant, and added additional allegations pertaining to Defendants' alleged time rounding. (*See* ECF #28; *see also* ECF #18.) Defendants filed an Answer to the Amended Complaint, denying Plaintiffs' claims and asserting additional affirmative defenses. (*See generally* ECF #32, Defs.' Answer to Am. Compl.)

### B.    Class Certification

On August 23, 2021, Plaintiffs filed their Motion for Fed. R. Civ. P. 23 Class Certification, Conditional Certification Pursuant to 29 U.S.C. § 216(b), Appointment of Class Counsel, and Issuance of Notice to Putative Class/ Collective Action Members. (ECF #27, the "Class Certification Motion.") The Class Certification Motion moved for class certification of two state law Fed. R. Civ. P. 23 subclasses, as well as conditional certification pursuant to 29 U.S.C. § 216(b) of two federal law subclasses. The Court granted in substance Plaintiffs' Class Certification Motion on September 28, 2022. (ECF #44.) In its Memorandum Opinion and Order, the Court appointed and designated Plaintiffs' Counsel, Scott & Winters Law Firm, LLC, as Class Counsel. (*See id.* at PageID ##1533-34 ("… Plaintiffs' counsel of record meets the requirements of Rule 23(g). Plaintiffs' motion for the appointment of class counsel is GRANTED").)

4

### C. Investigation, Discovery, Document Analysis, and Research

The discovery in this matter was significant. Formal, comprehensive discovery included written discovery, depositions of Representative Plaintiffs Donald Dorsey and Craig Murphy, and individual Defendant Joao C.F. Saraiva, who was also designated as Defendant Aviva's Fed. R. Civ. P. 30(b)(6) representative, as well as third party discovery of Defendants' payroll processor Paycom Payroll LLC ("Paycom") via subpoena. Ultimately, Paycom produced Microsoft Excel compatible spreadsheets containing payroll and timekeeping data comprised of several million data points and permits a calculation of the unpaid wages for the Plaintiffs based off approximately 99% of the total timekeeping and payroll records during a substantial portion of the relevant time period, from September 8, 2017 until December 31, 2021. In advance of the first mediation commencing November 22, 2021, Plaintiffs provided a comprehensive written itemization of damages and settlement demand. Plaintiffs further provided a supplemental mediation memorandum prior to the second mediation commencing on April 27, 2023.

As above, the Parties engaged in comprehensive discovery of the relevant wage and hour records, the individual Plaintiffs and Defendants, and a comprehensive analysis regarding the Plaintiffs' claims and the Defendants' defenses to these claims. Class Counsel also conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation has included, among other things, (a) multiple meetings and conferences with the Court, Plaintiffs, and Defendants' Counsel; (b) inspection and analysis of a statistically significant sample of class-wide documents produced by the Defendants and third party Paycom including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising over 5,400,000 data points; (c) analysis of the legal positions taken by Defendants; (d) investigation into the viability of class

treatment and collective action treatment; (e) analysis of potential class-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto.

Plaintiffs have vigorously prosecuted this case, and Defendants have vigorously contested it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendants' defenses to these claims.

### D. Settlement Negotiations

Settlement negotiations were arduous and contentious, occurring over a 17-month period amongst the Parties' litigation practice. In advance of mediation, Plaintiffs prepared and submitted comprehensive mediation position statements and demands addressing merits and damages issues. Two mediations before mediator Michael Ungar, a very seasoned and experienced attorney and mediator,[2] on November 22, 2021 and April 27, 2023, in addition to subsequent negotiations, were ultimately successful in achieving a settlement. Subsequent to the mediation, the Parties drafted settlement documents for filing with the Court, including the Class/Collective Action Settlement and Release Agreement (Ex. A) and proposed Notice of Class Action Settlement (Ex. B).

## III. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve deeply disputed claims between the Parties. The Settlement will resolve FLSA, 29 U.S.C. § 201, *et seq.,* and Ohio wage-and-hour claims of the Named Plaintiffs and all other members of the proposed Settlement Class

---

[2] *See* https://www.ulmer.com/attorneys/ungar-michael-n/ (last accessed June 19, 2023); https://www.crainscleveland.com/people/3401995/michael-n-ungar (last accessed June 19, 2023); https://profiles.superlawyers.com/ohio/cleveland/lawyer/michael-n-ungar/27ba9410-45db-4262-9f22-9da7f37c2bb2.html (last accessed June 19, 2023).

pursuant to Fed. R. Civ. P. 23(e), including claims of Opt-Ins to the litigation pursuant to the FLSA, 29 U.S.C. § 216(b). As highlighted below, Class Counsel and Defense Counsel believe that Settlement is appropriate because the released claims are being compromised without need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Class/Collective Action Members in light of the procedural and substantive encumbrances underscored by Defendants. Named Plaintiffs and Class Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and Class Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Class/Collective Members.

### B. The Proposed Settlement Payments and Distributions

**Total Settlement Amount.** Defendants have agreed to pay the total settlement amount of $750,000.00 as set forth in the Settlement Agreement. (Ex. A at 8, ¶ 4.) That sum will be used to make settlement payments to the Plaintiffs and other members of the proposed Settlement Class which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs and other Class Members; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of administration; (4) service awards; and (5) any other obligations of Defendants under the Settlement Agreement.

**Payments to Settlement Class Members.** From the total settlement amount, Class Members and FLSA Collective Action Members (who are also Class Members) will be paid the total allocated amount of $444,774.06 as set forth in the Settlement Agreement resulting in, at an average hourly rate of $19.49, *after* deduction of attorneys' fees and expenses, with an approximate additional 21.41 minutes of pay per day worked over the class period based on a 5-

day workweek (during the entire period based on each settlement participant's period of recovery). Based on the Settlement amount for the Class and an average hourly rate of $19.49, Class Members will receive approximately 178% of their alleged wage damages were they to have worked an additional 12 minutes per day off the clock, or 143% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock, an approximate average gross recovery of $2,021.70 per Class Member based on an estimated total settlement class of 220 employees.

Moreover, payments to Class Members are based proportionally on each Class Member's respective weeks of service to Aviva Metals as non-exempt employees from September 8, 2018 (two years prior to the filing of Plaintiffs' Complaint) until September 28, 2022. (*See* Ex. A at 6-7, defining "settlement percentage" and "settlement share".) In addition, FLSA Collective Action Members (who are also Rule 23 Class Members) will receive additional compensation for the third year of recovery from the date of Plaintiffs' class/conditional certification filing (from August 23, 2018 (three years prior to the filing of Plaintiffs' class/collective certification motion) until September 28, 2022 if the individual opted in to this matter after August 23, 2021, or from three (3) years prior to the date the individual opted into this matter until September 28, 2022 if the individual opted in to this matter before August 23, 2021), including liquidated damages as applicable. *See* 29 U.S.C. § 216(b).

As to the Settlement Class, inherent in the proposed distribution method in which Class Members are distributed settlement payments based proportionally on each Class Member's respective weeks of service to Aviva Metals during the relevant time period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). Plaintiffs and FLSA Collective Action Members, as also each members of the Settlement Class

to the extent they were employed during the applicable time period with Defendants, will participate in this recovery under the same procedure applicable to other Class Members with an additional approximate third year of recovery and liquidated damages as provided for by the FLSA. Importantly, this is not a "claims-made" settlement. All Class Members who do not exclude themselves from the settlement will receive a settlement check.

**Service Awards.** The proposed Settlement provides for service awards to Named Plaintiffs Donald Dorsey and Craig Murphy as set forth in the Settlement Agreement in the amount of $10,000.00 each in recognition of their assistance to Class Counsel and their contributions to achieving the Settlement on behalf of all Class Members. The proposed service awards are well-earned. Among other things, each of the Named Plaintiffs consulted with Class Counsel at critical stages and provided important and necessary documents and/or information throughout the course of the litigation. Plaintiffs Dorsey and Murphy each personally responded to comprehensive written discovery requests, each had their depositions taken by Defendants, each attended the November 22, 2021 mediation, each faithfully represented all Class Members' interests throughout the pendency of this matter, and each provided important information and integral insight to Class Counsel throughout the course of the litigation. These individuals took considerable time away from their paying jobs and/or other obligations to respond to comprehensive written discovery and prepare for and attend depositions and mediation, and each provided dispositive testimony that both resulted in certification of this highly contested matter under Fed. R. Civ. P. 23 and the FLSA, 29 U.S.C. 216(b), evidence which further drove negotiation of the proposed settlement. Each of the above individuals' contributions were instrumental in enabling Class Counsel to negotiate the proposed Settlement, and the proposed service awards are deserved and well earned. Plaintiffs Donald Dorsey and Craig Murphy went

above-and-beyond their obligations as representative plaintiffs, entitling these individuals to the requested service awards.

**Attorneys' Fees and Cost Reimbursements.** Class Counsel will receive attorneys' fees in the amount of $250,000.00, and costs in the amount of $10,225.94 as set forth in the Settlement Agreement. (*See* Ex. A at 11-12 ¶ 11.) After reductions for litigation expenses, the attorney fee recovery will equal one-third of the total settlement fund. (*See* Ex. D, Decl. of Counsel at ¶¶ 34, 42.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Class Counsel. (*See generally, id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 10-13 ¶¶ 10-13.)

**Costs of Administration.** From the Total Settlement Amount, Settlement Administrator Settlement Services, Inc. will receive $25,000.00 to administrate the settlement in this action. (*Id.* at 13 ¶ 13.)

## IV. THE PROPRIETY OF APPROVAL

### C. The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b)

This settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b), as to the Plaintiffs and other FLSA Collective Action Members. Most courts approve FLSA settlements in a single step. In an FLSA settlement, the Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D.Ohio May 30, 2012)); *Osman*

*v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2-3 (N.D.Ohio May 4, 2018). *Accord Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2, fn. 1 (June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).

In *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford v. Lexington-Fayette Urban Cty. Govt*., E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *3 (Oct. 23, 2008), citing *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp*., 497 F.3d 615, 631 (6th Cir. 2007) (further citation omitted)), a court within this district and division used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. 216(b): "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *See also Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017); *Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275, at *3-4 (Oct. 26, 2016). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper*, 2017 U.S. Dist. LEXIS 169237, at *5 (quoting *Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *3 (June 24, 2011)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (quoting *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating wage and hour claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendants' liability, which Defendants vehemently deny, but also each employees' damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers comprising of the Settlement Class performed pre-shift and/or post-shift compensable work each day, in addition to the amounts of these times. The outcome of litigating the case would be uncertain, and the risks of continued litigation would be high. In contrast, the Settlement assures that the covered employees will receive significant compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality of a settlement that will substantially benefit the covered employees is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and Opt-Ins in this action.

The other six factors are satisfied as well. Wage-and-hour cases for groups of employees are always expensive and time-consuming and the expense and likely duration of continued litigation strongly favor approval. Class Counsel have extensive experience litigating FLSA claims, and there is no fraud or collusion. The Parties engaged in comprehensive discovery, substantial document review, comprehensive data analysis, due diligence prior to arduous negotiations, mediation before a mediator with many years of experience resolving employment, including wage and hour, cases, and the issues were well understood. The settlement was reached as a result of arms-length negotiation between Parties represented by competent counsel.

12

*See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *5. Counsel on both sides support the Settlement, as do the Plaintiffs themselves. (*See* Exs. A, D.)

#### D.    The Proposed Settlement Qualifies for Preliminary Approval under Rule 23

"Class actions are meant to serve the public interest by providing an incentive for lawyers and class representatives to litigate on behalf of a group of people whose injury is legitimate and meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 782 (N.D.Ohio 2010). Amended Fed. R. Civ. P. 23 requires a two-fold determination for preliminary approval of a class action settlement. Rule 23 authorizes the Court to certify a class if it satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp*., 678 F.3d 409, 416 (6th Cir.2012). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate…" *See, e.g., Jackson v. Trubridge,* 2017 U.S. Dist. LEXIS 193782, at *4, 6 (granting preliminary approval of settlement that was "'fair, reasonable, and adequate' to all participants").

Rule 23(e), effective December 1, 2018, explicitly addresses preliminary approval. The Rule provides:

> **(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class.*
>
>     (A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
>
>     (B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is

13

> justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

As above, the Court must address two questions at the preliminary approval stage: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.* Courts have treated the amended standard as superseding the varying "preliminary approval" standards that courts had developed based on decisional law. *See Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220, at *12, fn. 1 (July 2, 2020) ("Rule 23(e) was substantially amended to provide an enumerated 'shorter list of core concerns' for courts to focus on when evaluating whether a proposed class action settlement is fair.") (citing *see* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes); *Noll v. Flowers Foods Inc.,* No. 1:15-cv-00493-LEW, 2022 U.S. Dist. LEXIS 75349, at *16-17 (D. Me. Apr. 26, 2022); *Busby v. Bonner,* W.D.Tenn. No. 2:20-cv-2359-SHL-atc, 2021 U.S. Dist. LEXIS 173421, at *8 (Jan. 28, 2021); *Herrera v. Wells Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS(MRWx), 2021 U.S. Dist. LEXIS 170195, at *21 (June 8, 2021); *Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29, 2019); *Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14, 2019). The proposed Settlement satisfies the above prerequisites and standards, as shown below.

### 1. Approval of the Proposal Under Civil Rule 23(e)(2)

When evaluating whether the Court *will likely be able to* "approve the proposal under Rule 23(e)(2)," the court applies amended Rule 23(e)(2)'s approval factors. Rule 23(e) states:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

14

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

These factors are addressed in turn.

### a. Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A)

Named Plaintiffs have aggressively pursued the interests of Class Members in this case, and Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *See Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)). As explained above, class representatives and Named Plaintiffs, and Class Counsel have adequately represented the class, including but not limited to by engaging in substantial discovery, comprehensive data analysis, and due diligence prior to arduous negotiations, and achieved an exceptional result for Class Members. (*See* Ex. D, Decl. of Counsel at ¶¶ 15-25, 30-32.)

### b. Arm's Length Negotiation – Rule 23(e)(2)(B)

Advisory Committee Notes provide that this factor considers whether negotiations "were conducted in a manner that would protect and further the class interests." "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey*, 617 F. Supp.

15

2d at 673 (citing *Hemphill v. San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616, 621 (S.D.Cal. 2005); *In re Toys R Us Antitrust Lit*., 191 F.R.D. 347, 352 (E.D.N.Y. 2000)); *accord Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *6 (Mar. 26, 2019).

The settlement here was reached as a result of arm's length negotiation through the assistance of respected attorney and mediator Michael Ungar. The Parties engaged in extensive discovery, including Plaintiffs' and Defendants' depositions, and tedious analyses of damages-related documents and data. The Parties were represented by law firms with extensive litigation and wage and hour experience. Class Counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to Class Members. This factor is likely to be satisfied.

### c. The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i)

Advisory Committee Notes provide that "[a]nother central concern will relate to the cost and risk involved in pursuing a litigated outcome." Here, the court may consider "the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

This factor is likely to be satisfied. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and all other Class Members. There is no guarantee that Plaintiffs will prevail at trial and the litigation could be long, immensely costly, and protracted. The Settlement assures that the Plaintiffs and all other Class Members will receive significant compensation with little additional delay in the face of substantial risk and costs commensurate with further prolonged litigation.

**d.  The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii)**

Here, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied. First, Class Members are required to do nothing to participate in the settlement – no claim forms or other documents are required to be completed and submitted to participate in the Class recovery – participation is automatic.

Second, as provided in Section III, B above, the settlement achieves an excellent result for Class Members. From the total settlement amount, Class Members will be paid the total allocated amount of $444,774.06 resulting in, *after* deduction of attorneys' fees and expenses, with an approximate additional 21.41 minutes of pay per day worked over the class period based on a 5-day workweek (during the entire period based on each settlement participant's period of recovery). Class Members will receive approximately 178% of their alleged wage damages were they to have worked an additional 12 minutes per day off the clock, or 143% of their alleged wage damages were they to have worked an additional 15 minutes per day off the clock, an approximate average gross recovery of $2,021.70 per Class Member based on an estimated total settlement class of 220 non-exempt manufacturing employees.

The recovery for the covered employees is significantly greater than the payments equating to several minute payouts in other Ohio lawsuits in which other workers sought payment for pre- and/or post-shift activities. For example, in *Kritzer*, Judge Gregory L. Frost **approved a settlement in which employees' payments equated to 4 minutes of unpaid wages per day.** *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *7. Similarly, in *Rotuna*, Judge Sara Lioi **approved an "exceptional" settlement recovery in which class members recovered 25% of**

17

**the damages they would have recovered by proving 8 minutes of unpaid wages per day, or 75% of their damages by proving 5 minutes of unpaid work each day.** *Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *21 (June 15, 2010) (noting that "[s]uch an allocation is well above the 7 % to 11 % average result achieved for class members.") (citation omitted). There is little doubt that the recovery in this case is an excellent result for all covered Class Members.

### e.  The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii)

As to this factor, Advisory Committee Notes provide that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendants until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 10-13 ¶¶ 10-13.) The attorneys' fee recovery will equal one-third of the total settlement fund. (*See* Ex. D, Decl. of Counsel at ¶ 34, 42.)

Moreover, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10.

The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G*

& M Roofing and Sheet Metal Co., 732 F.2d 495, 502 (6th Cir.1984)). *Accord Kritzer*, 2012 U.S.

Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but …

not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum*

*v. Stenson*, 465 U.S. 886, 897 (1984)).

     In the present case, as provided in Section III, B, and Section IV, B, 1, d, above, the

settlement achieves an excellent result for Class Members. The allocations provided to members

of the class are "well above the 7 % to 11 % average result achieved for class members."

*Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS

20446, at *19-20 (Mar. 8, 2010) (citing *see* Dunbar, Foster, Juenja, & Martin, Recent Trends III:

What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs.

(NERA) June 1995)). The attorneys' fees, and the settlement as a whole, are supported by the

Declaration of Class Counsel, attached as Exhibit D.

     "In this district, 'the preferred method is to award a reasonable percentage of the fund,

with reference to the lodestar and the resulting multiplier.'" *Swigart v. Fifth Third Bank*,

S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *14-15 (July 11, 2014) (citing

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008, at *13

(S.D.Ohio Jan.26, 2011)); *Lonardo*, 706 F. Supp. 2d at 790 (percentage-of-fund is the "preferred

method"). Another court within this district has noted that "[t]he percentage of the common fund

method has the advantage of establishing reasonable expectations on the part of class counsel 'as

to their expected recovery,' and encourag[es] early settlement before substantial fees and

expenses have accumulated." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-21 (citing

*Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir.1993) (further citation

omitted)).

Applying *Fegley* and *Rawlings*, courts in the Sixth Circuit commonly approve one-third fee awards in wage-and-hour actions, including Rule 23 overtime cases. *Wright v. Premier Courier, Inc.,* No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (S.D. Ohio Aug. 17, 2018) (approving one-third attorney fee award and noting "the hours expended and time records submitted by Class Counsel [including SCOTT & WINTERS] further underscore their competency and efficient handling of this matter, favoring approval."); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7) (approving one-third of the common fund as attorneys' fees) (additional citations omitted)); *Macaluso v. Zirtual Startups, LLC,* S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *18-19 (Aug. 17, 2021) (approving request for attorneys' fees in the amount of one-third of the settlement fund and noting that "Plaintiffs' counsel [SCOTT & WINTERS] brings substantial collective experience in litigating claims under [the] FLSA. [] Counsel zealously advocated for the Opt-In Plaintiffs' interests throughout the entirety of this litigation."); *Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *2, 9-13 (July 27, 2018) (FLSA collective matter involving 1,869 opt-ins where the court decreased counsel's request of 40% of the fund to one-third); *Hebert v. Chesapeake Operating, Inc*., S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *21-22 (Sep. 20, 2019) (Morrison, J.) (declining a requested fee award of 40% of the common fund involving not more than 400 class members; subsequently approving 33% of the common fund or $2,821,500); *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 (Mar. 26, 2019) (Gaughan, J.) (approving 33 1/3% fee award), *and Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730, at *3 (Nov. 8, 2018) (approving 40% of the overall settlement for attorney's fees).

Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20 (citing study conducted by the National Economic Research Assocs.). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12), although the average result achieved for class members is generally only 7% to 11% of the claimed damages, *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citation omitted).

Measured by the NERA benchmarks, the proposed Settlement in the present case is exemplary. Class Counsel have actively, aggressively, and efficiently litigated this case against the formidable defense mounted by Defendants. The resulting settlement negotiated by Class Counsel ensures substantial payments to the Plaintiffs and other Class Members. Based on all relevant factors, the proposed payment of attorneys' fees and cost reimbursements to Class Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Furthermore, as provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel are not to be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments disbursed to Plaintiffs and other Class Members. (*See* Ex. A at 10-13 ¶¶ 10-13.); *see also* Fed. R. Civ. P. 23(e)(2)(C)(iii).

**At the final approval stage, after additional substantial additional work to be completed by Class Counsel, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the Sixth Circuit's "*Ramey*" factors.** *See, e.g., Arledge v. Domino's Pizza, Inc*., 2018 U.S. Dist. LEXIS 179474, *8-15 (N.D. Ohio Oct. 17, 2018); *Rudi v. Wexner*, S.D.Ohio No. 2:20-cv-3068, 2022 U.S. Dist. LEXIS 98299, at *11-14 (May 16, 2022).

In the meantime, it is likely that the amount and timing of the proposed attorneys' fees will support final approval because attorney fee recoveries in class and collective actions representing 33% of the common fund generally fall within the acceptable range. *See e.g., Barnes*, 2019 U.S. Dist. LEXIS 65657, at *17 (citing cases).

> **f.  The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv)**

Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement (Ex. A) is the only agreement connected to this class action settlement. This factor is therefore likely to be satisfied.

> **g.  The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)**

Advisory Committee Notes comment that the amended Rule 23 prohibits "inequitable treatment of some class members vis-a-vis others." As to the Rule 23 Settlement Class, inherent in the proposed distribution method in which Class Members are distributed settlement payments based on respective weeks of service to Aviva Metals during the settlement period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This distribution method, based on each Class Member's weeks of service during the applicable time period with a $50.00 minimum payment, is eminently the most equitable proposed method of distributing relief to the Settlement Class.

> **2.  Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii)**

Now that the Parties have shown that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second consideration under Rule 23(e)(1)(B): whether the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." As noted above, the Court previously granted Plaintiffs' Rule 23 Motion for Class

Certification on September 28, 2022. (ECF #44.) In its' September 28, 2022 Order, this Court

found that the certified classes met the ascertainability requirement, as well as the four

prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation.

*Dorsey v. Aviva Metals, Inc.,* No. 1:20-cv-02014, 2022 U.S. Dist. LEXIS 176562, at *20-36

(N.D. Ohio Sep. 28, 2022). Nevertheless, although this matter was previously certified, Fed. R.

Civ. P. 23(e)(4) provides that class members, at the Court's discretion, be given a second

opportunity to request exclusion from a proposed settlement class. The text of Rule 23(e)(4)

reads: "New Opportunity to be Excluded. If the class action was previously certified under Rule

23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to

request exclusion to individual class members who had an earlier opportunity to request

exclusion but did not do so." *See City of N. Royalton v. McKesson Corp. (In re Nat'l Prescription

Opiate Litig.),* 976 F.3d 664, 698 (6th Cir. 2020) (Rule 23 provides that "plaintiffs can decide to

opt out after class certification but before a settlement is proposed…. Should negotiations

produce a proposed settlement, Rule 23(e) gives the district court 'discretion' to grant class

members a second opportunity to opt out").

      Given the modified class definition, which combines and simplifies the prior certified

class definitions, the Parties seek to modify the previously-certified class definitions for

settlement purposes. As noted by the Sixth Circuit, "district courts have broad discretion to

modify class definitions[.]" *Powers v. Hamilton Cty. Pub. Def. Comm'n,* 501 F.3d 592, 619 (6th

Cir. 2007) (affirming that "the district court's multiple amendments merely showed that the court

took seriously its obligation to make appropriate adjustments to the class definition as the

litigation progressed") (citing *see, e.g. Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 750 (7th

Cir.2005) (noting that "[l]itigants and judges regularly modify class definitions"); *In re*

*Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir.2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.")). Newberg on Class Actions observes that "Courts are granted enormous discretion" in modifying a class definition pursuant to Rule 23. 3 Newberg and Rubenstein on Class Actions § 7:37 (6th ed.).[3] Here, while the class definitions have been slightly modified, the proposed Settlement Class nevertheless meets the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation.

**Numerosity.** The Settlement Class consists of approximately 220 non-exempt manufacturing employees of Defendants. Numerosity is met.

**Commonality and Typicality**. By definition, the Rule 23 Settlement Class consists of all present and former hourly non-exempt manufacturing employees of Aviva Metals, Inc. at Aviva Metals, Inc.'s 5311 West River Rd. N., Lorain, OH 44055 location during the period of September 8, 2018 until September 28, 2022, and who did not previously exclude themselves from this action. Plaintiffs allege that Defendants owe additional compensation to these persons pursuant to the FLSA and Ohio wage-and-hour statutes, O.R.C. §§ 4111.01, *et seq.* (*See generally* ECF #28, Am. Compl.) All members of the Settlement Class, including Named Plaintiffs, have these claims, and adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit..." *Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426, 441 (6th Cir.2013). Plaintiffs' claims are the type of

---

[3] Courts likewise have discretion to amend the class definition in FLSA collective actions. *See Kuchar v. Saber Healthcare Holdings, LLC*, N.D.Ohio No. 1:20-cv-02542, 2021 U.S. Dist. LEXIS 127859, at *9-10 (July 9, 2021); *see also Frye v. Baptist Mem'l* Hosp., Inc., 495 F. App'x 669, 674 (6th Cir. 2012) ("instructing district courts to consider partial decertification" when the claims of part of the class cannot be proven by the same representative testimony) (citation omitted).

across-the-board alleged practices that establish commonality.

**Adequacy of Representation.** As above, Plaintiffs have aggressively pursued the interests of Class Members in this case, and Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *Young*, 693 F.3d at 543 (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083 (citation omitted)). As explained above, the class representatives and Class Counsel have adequately represented the class, achieving an exceptional result for Class Members. Fed. R. Civ. P. 23(e)(2)(A). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20.

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Whether Plaintiffs and other Class Members should have been paid additional overtime compensation was the common issue in this litigation, and this issue is the primary issue driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** Rule 23(b)(3) requires class litigation to be "superior to other available methods for fairly and efficiently adjudicating the controversy," and describes four factors that are "pertinent" to this superiority requirement. The present case is precisely the type of case in which class litigation is the superior method of adjudication.

Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions." This factor requires the Court to consider whether "Settlement Class Members have any interest in maintaining this litigation as

25

separate actions." *Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201, at *15 (Nov. 15, 2019). There is no evidence that this is the case in this action. As here, "the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers." *Id.* (citing *Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *26 (Sep. 12, 2007)).

Rule 23(b)(3)(B) also requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. No related, pending litigation exists here.

Rule 23(b)(3)(C) further requires courts to consider the desirability of "concentrating the litigation of the claims in the particular forum." Here, concentration of claims is in fact desirable because the Defendants' operating location – where all class members worked – is located in this district and division.

Finally, Rule 23(b)(3)(D) asks the Court to consider any "likely difficulties in managing [the] class action." Fed. R. Civ. P. 23(b)(3)(D). As noted in *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems"), this requirement is generally satisfied when a case is certified for settlement purposes.

**Ascertainability:** "Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537-38 (internal citations omitted). Here, the ascertainability requirement is satisfied because

Class Members are objectively identified through Defendants' payroll and management software and systems.

**E.**    **The Service Awards are Proper and Reasonable**

A reasonable service award is "common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *18, quoting *Cullen v. Whitman Med. Corp*., 197 F.R.D. 136, 145 (E.D. Pa. 2000)) (internal quotations omitted)). *Accord Hunter v. Booz Allen Hamilton Inc.,* No. 2:19-cv-00411, 2023 U.S. Dist. LEXIS 76859, at *31 (S.D. Ohio May 2, 2023) (approving $10,000 service awards to two named plaintiffs); *McGrothers v. GT Pizza, Inc.,* No. 2:20-cv-4050, 2022 U.S. Dist. LEXIS 228270, at *19-20 (S.D. Ohio Nov. 9, 2022) ($10,000 service award approved as "in line with what is typically awarded in these [wage and hour] cases." (citations omitted)); *Shanahan v. KeyBank, NA*, No. 1:19cv2477, 2021 U.S. Dist. LEXIS 50516, at *12-13 (N.D. Ohio Mar. 16, 2021) (approving $10,000 service awards to ten named and opt-in plaintiffs); *Salinas v. United States Xpress Ents., Inc*., E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff, along with $500 service awards for ten opt-in plaintiffs) (citing *Bredbenner v. Liberty Travel, Inc.,* D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at *68 (Apr. 8, 2011) ($10,000 each for the 8 named plaintiffs); *Dewey v. Volkswagen of Am*., 728 F.Supp.2d 546, 610 (D.N.J.2010) ($10,000); (additional citation omitted)); *see also* 5 Newberg and Rubenstein on Class Actions § 17:8 (6th ed.) (citing studies showing that "the average award per plaintiff ranged from $14,371 (in 2021 dollars) in one study to $24,517 (in 2021 dollars) in the other...").

27

In the present case, the proposed service awards of $10,000.00 to each of the Plaintiffs Donald Dorsey and Craig Murphy are amply justified by their assistance to Class Counsel and their contributions to achieving the Settlement on behalf of all Class Members. Indeed, each of the Named Plaintiffs incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," *In re Dun & Bradstreet Credit Servs. Customer Litigation,* 130 F.R.D. 366, 374 (S.D.Ohio 1990), by, among other things, providing important analysis to Counsel and advising Counsel as to prosecution of the action prior to and during the pendency of this matter, as well as consulting with Class Counsel at critical stages. Plaintiffs Donald Dorsey and Craig Murphy, the Named Plaintiffs who spearheaded this litigation, "spent a good deal of time and effort in this case," *see id.*, personally responded to comprehensive written discovery requests, collectively engaged in many dozens of conversations/communications with Class Counsel prior to and during the pendency of this action, each had their depositions taken by Defendants, each attended the November 22, 2021 mediation and assisted Class Counsel during the April 27, 2023 mediation, each helped counsel prepare Plaintiffs' comprehensive discovery requests to Defendant Aviva, multiple mediation statements and settlement demands, and each provided necessary and important information and documents throughout the course of the litigation. Plaintiff Murphy also voluntarily attended the Rule 30(b)(6) deposition of Defendant Aviva and individual Defendant Saraiva, providing important insight and information throughout the deposition, despite no requirement to do so. Furthermore, Named Plaintiffs faithfully represented the interests of all Class Members and ably assisted Class Counsel, and took time away from their paying jobs and/or other obligations to prepare comprehensive discovery responses and attend depositions and negotiation-related matters, and each provided testimony that further drove negotiation of the proposed settlement. Their contributions were instrumental

28

in achieving this Settlement on behalf of all concerned. The proposed service awards to Named Plaintiffs Donald Dorsey and Craig Murphy are reasonable and well-earned.

**F.     The Proposed Notice Should Be Approved – Rule 23(c)(2)(B)**

In order to protect the rights of absent members of a Settlement Class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Fed. R. Civ. P. 23(c)(2)(B) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of Class Counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Here, each Class Member will receive a tailored notice so that all putative Class Members will be given a new opportunity to participate or not to participate, including the right to preserve any individual claims or rights they may have against the Defendants in this action. The proposed Notice of Class Action Settlement (the "Notice"), attached as Exhibit B, should be approved. The proposed Notice gives Class Members a reasonable period of 60 calendar days after the mailing date to opt out of the Settlement Class or object to the Settlement. The Notice

29

defines the class, describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments and provides each Class Member's individual approximate recoveries,  clearly describes the options open to the Class Members and deadlines for taking action, describes the terms of the proposed settlement, discloses benefits provided to the class representatives, provides information regarding attorney's fees and costs, indicates the time and place of the fairness hearing, explains the procedure for distributing settlement funds, informs Class Members how to object to the Settlement or request exclusion from the Class if they so choose, notifies Class Members that they may enter an appearance through an attorney if they so desire, and prominently displays the address and telephone number of Class Counsel and the settlement administrator and the procedure for making inquiries. The Notice is written in plain and understandable language. The Parties request approval of the Notice as drafted. If approved, the Notice will be sent to potential Class Members by "United States mail." Rule 23(c)(2)(B). In sum, the Notice constitutes the "best notice that is practicable under the circumstances," and, therefore, should be approved. *See id.*

## V.     CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit C.

Respectfully Submitted,

<div style="display:flex; justify-content:space-between;">

s/ Kevin M. McDermott II
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs and Class Counsel*

s/ Mark S. Fusco (via email consent)
Mark S. Fusco (Reg. No. 0040604)
   Direct Dial: 216-619-7839
    Email: mfusco@walterhav.com
Jessica L. MacKeigan (Reg. No. 0087121)
   Direct Dial: 216-928-2928
   Email: jmackeigan@walterhav.com
P: 216-619-7839
**WALTER | HAVERFIELD LLP**
The Tower at Erieview
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114
Phone: 216-781-1212/Fax: 216-575-0911

*Attorneys for Defendants*

</div>

31

## CERTIFICATION OF COMPLIANCE

The undersigned hereby certifies that the above Memorandum in Support complies with the Court's June 30, 2023 Order (ECF #71) allowing this Memorandum to exceed the page limitations set forth in Local Rule 7.1(f). (*See also* ECF #70 (requesting not to exceed brief page limitation extension of 32 pages).)

*/s Kevin M. McDermott II*
Kevin M. McDermott II (0090455)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s Kevin M. McDermott II*
Kevin M. McDermott II (0090455)